526 P.2d 1258

**HOMES & SON CONSTRUCTION CO., INC., an Arizona corporation, Appellant,**

v.

**BOLO CORPORATION, a California corporation, Appellee.**

**No. 1 CA–CIV 1992.**

Court of Appeals of Arizona, Division 1, Department B.

Oct. 8, 1974.

Rehearing Denied Nov. 20, 1974.

Review Denied Jan. 14, 1975.

Moore & Romley by Craig R. Kepner, Phoenix, for appellant and cross-appellee.

Shimmel, Hill, Bishop & Gruender, P. C. by Richard B. Johnson, Phoenix, for appellee and cross-appellant.

## OPINION

JACOBSON, Chief Judge of Division One.

The issues raised by this appeal and cross-appeal are whether a contractor is entitled to pre-judgment interest on the amount found due under a cost-plus with a maximum construction contract and whether the trial court's factual determinations are supported by the evidence.

This protracted litigation originated out of a contract entered into on December 27, 1963 between the plaintiff-appellant Homes & Son Construction Co. (Homes) as contractor, and defendant-cross-appellant Bolo Corporation (Bolo) as owner, whereby Homes agreed to construct a shopping center facility for Bolo. Prior to construction, Bolo had entered into leases with Skaggs Drug Center, Inc., and Mayfair Markets dba El Rancho Markets as prospective tenants of the shopping center.

The contract required that cost of the construction would not exceed a guaranteed maximum of $378,000. This guaranteed maximum was arrived at by providing that Bolo would reimburse Homes for certain costs of construction not to exceed $348,000 and in addition pay a contractor's fee of eight percent of the total cost of the work performed or $30,000, whichever sum was the lesser.

The contract further provided that construction would be completed 180 days after receipt of a notice to proceed with a penalty clause of $100 per day for each day delay beyond the 180-day period. In addition, all change orders on work were to be in writing.

On January 8, 1964, Bolo gave notice to Homes to commence construction and Homes engaged in some site preparation immediately following this notice, although Homes did not obtain a building permit from the City of Mesa until January 15, 1964.

During the course of construction, Bolo made periodic payments to Homes totalling $299,376.00 as of July, 1964. On September 14, 1964, Homes submitted a final billing claiming reimbursable costs of $342,080.89 and a contractor's fee of $27,366.47, together with some $18,000.00 as required by change orders. He claimed a balance due of $88,181.92. When this billing was objected to, a revised billing was made on October 5, 1964 and submitted, claiming a balance due of $87,143.50. Again, this billing was disputed and on December 15, 1964, Homes brought this action seeking the claimed balance due under the contract. Bolo filed a counterclaim in that action alleging defective construction and failure to follow specifications. Subsequently, the complaint was amended to request arbitration. The trial court ordered arbitration, an award was entered and subsequently confirmed by the trial court. The judgment confirming the arbitration award was appealed and subsequently reversed by the Arizona Supreme Court, which remanded the matter to the superior court for trial. *See,* Bolo Corp. v. Homes & Son Construction Co., Inc., 105 Ariz. 343, 464 P.2d 788 (1970).

On February 4, 1966, Homes again submitted a billing to Bolo, showing a balance due of $87,022.15. This billing, together with the October 5, 1964 billing, formed the basis for a stipulation by the parties that the entire cost of the job totalled $352,162.13 and left to the court the determination of whether $4,557.32 claimed by Homes were proper charges. The trial court subsequently found that $2,200.00 of this claimed sum was a proper charge and further found that had Homes completed

the construction timely in accordance with plans and specifications it would have due and owing $86,519.00. The trial court further found that the construction commenced on January 15, 1964 and was substantially completed on August 7, 1964; found that Bolo was entitled to damages for Homes failing to complete the work in 180 days in the sum of $2,500.00; found that Homes had failed to comply with plans and specifications and awarded damages to Bolo in the sum of $17,670.00; and entered judgment in favor of Homes in the sum of $62,892.00 after deducting Bolo's damages, but denied Homes pre-judgment interest.

Homes has appealed the denial of pre-judgment interest. Bolo has cross-appealed, contending that the construction was never successfully completed; that the trial court incorrectly determined the commencement and termination of construction dates; and that the trial court did not fully award damages for faulty construction.

## PRE-JUDGMENT INTEREST

Both parties agree that a creditor is entitled to interest on its debt prior to judgment provided the sum demanded is "liquidated." *See,* L. M. White Contracting Co. v. St. Joseph Structural Steel Co., 15 Ariz.App. 260, 488 P.2d 196 (1971); Arizona Eastern Railroad Co. v. Head, 26 Ariz. 259, 224 P. 1057 (1924). Where the parties disagree is whether Homes' claim was "liquidated." Bolo contends the claim was "unliquidated" for three reasons: (1) in a cost-plus contract over which disputes arise as to the items comprising the cost, the claim is not liquidated; (2) the existence of an unliquidated counterclaim renders the account unliquidated; and (3) where the amount of judgment differs from the amount of demand, the claim is obviously unliquidated.

■ We start with the definition that a claim is liquidated "if the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance upon opinion or discre-

tion." Arizona Title Insurance & T. Co. v. O'Malley Lbr. Co., 14 Ariz.App. 486, 496, 484 P.2d 639, 649 (1971).

■ We turn then to Bolo's first contention that a cost-plus contract is incapable of being liquidated because of the existence of disputes arising out of the items comprising the account. We first note that merely because the amount due under a contract is computed on the basis of the cost of a project plus a stated percentage, does not render the amount due incapable of being computed exactly, so as to preclude pre-judgment interest. Coleman Engineering Co. v. Northern American Aviation, 65 Cal.2d 396, 55 Cal.Rptr. 1, 420 P.2d 713 (1967). However, unless the contract provides otherwise, it is the obligation of the creditor to supply to the debtor sufficient information and supporting data so as to enable the debtor to ascertain the amount owed and interest does not begin to run until such data is supplied. Conderback, Inc. v. Standard Oil of California, Western Operations, 239 Cal.App.2d 664, 48 Cal.Rptr. 901 (1966). Having once supplied such information, the creditor is entitled to such interest on the amount of money the debtor retains which he ought to pay. Mere differences of opinion as to the amount due does not preclude pre-judgment interest since disputes as to liability itself does not preclude interest. Arizona Title Insurance & T. Co. v. O'Malley Lbr. Co., *supra.*

■ Moreover, the debtor who in good faith contests the amount due may stop interest from accruing on the amount he contends is due by making and keeping good an unconditional tender of the amount he contends is owing. Laycock v. Parker, 103 Wis. 161, 79 N.W. 327 (1899).

■ Does the existence of an unliquidated counterclaim by the debtor preclude the charging of pre-judgment interest? We believe not. It appears to be the well-recognized rule that if the amount due under a contract is ascertainable, but is reduced by the existence of an unliquidated set-off or counterclaim, attributable to the

contract, interest is properly allowable on the balance found due from the due date. Farrington v. Freeman, 251 Iowa 18, 99 N.W.2d 388 (1959); Fluor Corp. v. United States ex rel. Mosher Steel Co., 405 F.2d 823 (9th Cir.), cert. denied, 394 U.S. 1014, 89 S.Ct. 1632, 23 L.Ed.2d 40 (1969) (applying Arizona law); Annot., 89 A.L.R. 678 (1934).

■ This brings us to Bolo's third contention, that is, that Homes' claim must be considered as unliquidated for it was presented with three billings from Homes, each different, and the trial court actually found a fourth figure due and owing, assuming timely and perfect performance by Homes. In analyzing this contention, it is important to keep in mind what constituted the difference in billing. The original billing dated September 14, 1964 was for a balance due of $88,181.92. When this billing was objected to, an additional billing was submitted dated October 5, 1964, deleting a cost for striping the parking lot, making a $60.00 change in painting and drywall and reducing the cost of a change order. This billing requested payment in the sum of $87,143.50, a reduction from the September billing in the sum of $1,038.42. After litigation had commenced and after audits of the accounts, a billing dated February 3, 1966 in the amount of $87,022.15, a difference of $121.35 from the October 5, 1964 billing was submitted. The trial court in turn found that the $86,519.00 was due and owing if timely and perfect performance had been accomplished, a difference of $513.15 from the February 3, 1966 billing, and ascertainable from a resolution of the only items in dispute between the parties. When we consider that the total amount of this contract was in excess of $378,000.00, we believe the better rule to be that "the erroneous omission of a few matters from the account or erroneous calculation of the cost do not mean that damages are not capable of being made certain by calculation." General Ins. Co. of America v. Commerce Hyatt House, 5 Cal.App.3d 460, 475, 85 Cal.Rptr. 317, 327 (1970).

■ Applying the principles set forth above, we hold that by October 5, 1964, Homes had complied with contract provisions and had supplied Bolo with sufficient information from which the amount of his claim was ascertainable with reasonable exactness, Homes is entitled to interest from that date on any balance found due after proper reduction by Bolo's counterclaim.

### CROSS-APPEAL

To properly understand Bolo's cross-appeal, additional facts are required. In its findings, the trial court specifically found that Homes had failed to comply with plans and specifications in that the terrazzo floor was not installed as specified but could be corrected by regrinding and finishing, that the hanging wires supporting the ceiling were not according to such specifications, and that the roof was not installed according to specifications. The trial court, however, did find that the sub-base which consisted of ABC mix rather than six inches of crushed rock as called for in the plans, was the result of a verbal change order agreed to by Bolo's representative. Moreover, the trial court found that the sum of $1,200.00 contributed by Bartlett & Homes, a sub-contractor, and $1,000.00 contributed by Blaser Masonry, also a sub-contractor, were properly included within the cost of the job. These two sub-contractors had agreed with Homes to reduce the stated amount of their billings by these amounts in order for Homes to defray the costs of arbitration. The sums were in fact not paid by Homes to these sub-contractors. The trial court also found that the actual start of construction was January 15, 1964 and completion was on August 7, 1964.

■ Bolo by its cross-appeal contends that by reason of the defects specifically found by the trial court and in addition to other claimed defects not found by the trial court, resulted in the failure of Homes to substantially perform its contract and therefore its recovery, if any, should

be in quantum meruit rather than under the contract. We have reviewed the evidence and conclude that it supports the trial court's conclusion that Homes substantially performed its contract and was entitled to be paid in accordance with the terms of that contract.

Bolo also contends that the trial court improperly determined that the terrazzo flooring could be corrected by regrinding, urging that the evidence showed that the entire floor must be re-installed at a cost of $36,740.00. Again, while the evidence on this issue is in dispute, there is reasonable evidence that the damages ascertained by the trial court were correct. Likewise, the trial court's finding that the change in composition of the sub-base was the result of a verbal change order is also supportable in the evidence.

■ As to Bolo's contention that the evidence only supports a finding that construction commenced on January 8, 1964, we agree. The contract specifically provided that work would be completed "on or before 180 days after receipt of notice to proceed . . .." The evidence shows that both written and oral instructions to proceed with construction were given on January 8, 1964. Homes' foreman testified he actually started site preparation on January 8, 1964, although a building permit was not obtained until January 15, 1964. Under the terms of the contract, it was not the date that building permits were issued which controls the imposition of the late penalties, but the date notice to proceed was received. This date under the evidence was January 8, 1964. The trial court incorrectly determined this starting date. However, the evidence as to termination date, that is, the date the building was completed, is in dispute. Taking the evidence in the light most favorable to support the trial court's finding we hold there

is evidence to support the finding that the building was completed on August 7, 1964. Because of the incorrect starting date, Bolo is entitled under the contract to an additional $700.00 as delay damages.

■ Finally, Bolo's cross-appeal attacks the finding that the contributions by the sub-contractors to help Homes fight the arbitration battle were proper charges against it. The contract provides:

"Owner agrees to reimburse contractor for sums *actually expended* by contractor for the purposes set forth below in constructing the improvement . . .."

\* \* \* \* \* \*

"5. The necessary net payments *required to be made and actually made* to subcontractors . . .." (emphasis added)

It is clear that Homes never paid Bartlett & Homes nor Blaser Masonry for the contributions made by them in the litigation fight. While it may appear unfair to allow Bolo to take advantage of a good will contribution on behalf of its adversary contractor, the contract is clear that Homes is entitled to reimbursement from Bolo of only those sums actually made or expended. Since Homes never expended these sums, under the contract it is not entitled to be reimbursed by Bolo. We therefore hold that Bolo is entitled to a credit of $2,200.00, representing contributions to Homes by the sub-contractors.

For the foregoing reasons, the judgment in favor of Homes is modified by granting judgment against Bolo in the sum of $59,992.00, with interest thereon at the rate of 6% per annum from October 5, 1964, until paid. The judgment of the trial court as so modified is affirmed.

HAIRE, P. J., and EUBANK, J., concur.