**Julie E. COLLINS, et al., Plaintiffs,**

v.

**D.R. HORTON, INC., Defendant.**

**No. CV–99–0330–PHX–ROS.**

United States District Court,
D. Arizona.

March 21, 2005.

Lawrence Allen Katz, Esq., Monica Linn Goebel, Esq., Steptoe & Johnson LLP, Phoenix, AZ, for Plaintiffs.

Lonnie J. Williams, Jr., Esq., Quarles & Brady Streich Lang LLP, Lisa Marie Coulter, Esq., Kristin Major Siciliano, Snell & Wilmer LLP, Phoenix, AZ, for Defendant.

William D. Holm, Esq., Ann Elizabeth Larimer, Jones Skelton & Hochuli PLC, Phoenix, AZ, for Intervenor.

## ORDER

SILVER, District Judge.

Plaintiffs Julie E. Collins ("Collins") and Robert B. Ryan ("Ryan") move this Court pursuant to 9 U.S.C. §§ 9 and 10 for an order confirming in part and vacating in part an arbitration award issued on October 10, 2003. For the reasons stated below, the Motion to Confirm in Part is partially granted and partially denied. The Motion to Vacate in Part is denied.

## BACKGROUND

Defendant D.R. Horton, Inc. ("Horton") is a homebuilding company with operations in several states. (Compl. ¶ 10 [Doc. # 1]). In 1997, the company signed a merger agreement with Continental Homes Holding Corporation ("Continental"), a company in the homebuilding and home mortgage business located in Scottsdale, Arizona. (*Id.* ¶¶ 7, 13.)

In anticipation of the merger, Continental decided to enter into employment agreements with certain of its employees. (*Id.* ¶ 18.) The agreements were designed to induce the employees to stay on with the merged company for at least a period of time sufficient to accomplish the merger and the related combination of operations. (*Id.*)

Among those who entered into employment agreements were Plaintiffs Collins and Ryan and nonparty W. Thomas Hickcox ("Hickcox"). (*Id.* ¶ 17, 38; Exh. A to Pl.'s Mot. [Doc. # 229].) Collins was Continental's Chief Financial Officer, Treasurer, and Secretary. (Compl.¶ 9.) Ryan was the Vice President of Management Information Systems and a member of the Board of Directors. (*Id.*) Hickcox was Continental's Chief Executive Officer. (Exh. A to Pl.'s Mot.)

Among other things, Plaintiffs' employment agreements set forth the severance

payments Plaintiffs would receive in the event their employment was terminated with or without cause (Compl.¶¶ 19, 41.) The agreements also set forth the payments Plaintiffs would receive if they resigned during the term of the agreements for "good reason." (*Id.*) Hickcox's agreement contained similar provisions. (07/02/01 Order at 4 [Doc. # 170].)

As negotiations over the merger continued, an issue arose concerning whether Continental employees would be able to accelerate vesting of their stock options at the time of the merger. (Compl.¶ 66.) The proposed form of the merger did not allow for acceleration. (*Id.*) Plaintiffs allege that—to induce support for the merger—Horton verbally promised them and other Continental employees that it would give them 30,000 shares of its stock to offset the loss of their unvested options. (*Id.*)

The Continental–Horton merger became effective in April 1998. (*Id.* ¶ 13.) In November 1998, Horton notified Hickcox that it was terminating him without cause. (*See* 07/02/01 Order at 2.) Shortly thereafter, Collins and Ryan resigned their positions in the company, invoking the "for good reason" provision in their employment agreements. (Compl.¶¶ 34, 56.)

On February 22, 1999, Hickcox filed suit against Horton in this District, alleging breach of contract, failure to pay wages, promissory estoppel, and fraud. (*Hickcox v. D.R. Horton, Inc.*, CV–99–239–PHX–SRB.) The lawsuit was assigned to Judge Earl H. Carroll and later transferred to Judge Susan R. Bolton. Hickcox claimed that Horton miscalculated the severance payments due under the provision of his employment agreement governing terminations without cause. (07/02/01 Order at 2.) He also claimed that Horton had refused to provide him with his portion of the 30,000 shares of stock it allegedly promised. (*Id.*)

That same day, Collins and Ryan jointly filed suit against D.R. Horton in this District, also alleging breach of contract, failure to pay wages, promissory estoppel, and fraud. This Court received the assignment. Collins and Horton claimed that they had resigned for "good reason" and that Horton had refused to pay them severance pay and benefits due under their employment agreements. (Compl.¶¶ 36, 58.) Like Hickcox, Collins and Ryan further claimed that Horton had reneged on its alleged 30,000–share promise. (*Id.* ¶¶ 66–70.)

On May 14, 1999, Horton moved in *Hickcox* to dismiss the plaintiff's claims and compel arbitration based on the compulsory arbitration provision in the parties' employment agreement. On May 27, 1999, however, the Ninth Circuit held that the Federal Arbitration Act ("FAA") does not apply to employment contracts and that compulsory arbitration provisions in such contracts were unenforceable. *See Craft v. Campbell Soup Co.*, 177 F.3d 1083, 1093 (9th Cir.1998). The *Hickcox* court thus denied the motion to dismiss. Horton did not move to compel arbitration in *Collins*, but preserved the contractual agreement to arbitrate as an affirmative defense.

The *Hickcox* and *Collins* actions thereafter proceeded through discovery and to the dispositive motion phase. Collins and Ryan moved for partial summary judgment in *Collins* on July 31, 2000, and Horton cross-moved for partial summary judgment on August 2, 2000. On December 12, 2000, Hickcox and Horton each filed motions for partial summary judgment in *Hickcox*.

On December 27, 2000, Horton moved to consolidate the *Hickcox* and *Collins* actions, arguing, among other things, that both cases involved an alleged breach of a verbal promise to provide the plaintiffs with 30,000 shares of Horton stock. (Exh. A. to Pl.'s Mot. at 6.) Judge Bolton ac-

knowledged that the contract and fraud claims arising out of the alleged promise presented a common issue, but denied the motion to consolidate based on differences in the parties wage claims. (07/02/01 Order at 5.)

In a decision entered on March 30, 2001 and in a written opinion entered on August 31, 2001, this Court denied the cross-motions for partial summary judgment filed in *Collins*. On July 23, 2001, Judge Bolton granted summary judgment in favor of Horton on some of the plaintiff's claims in *Hickcox*, but found the remaining claims survived summary judgment and required a trial. This Court scheduled a bench trial in *Collins* to begin on May 14, 2002. Judge Bolton scheduled a jury trial in *Hickcox* to begin on March 12, 2002.

In the meantime, on March 31, 2001, the United States Supreme Court issued its decision in *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001), a case that had been appealed from the Ninth Circuit. The Supreme Court held that, contrary to the Ninth Circuit's reasoning in *Craft*, the FAA does apply to employment contracts (except contracts for employment of transportation workers) and that otherwise valid compulsory arbitration provisions were enforceable. On July 30, 2001, Horton moved to dismiss the *Collins* action and compel arbitration based on the ruling in *Circuit City*. The Court granted the Motion on March 29, 2002.

On March 28, 2002, the day before the Court entered its Order compelling arbitration, a jury returned a verdict in favor of the plaintiff in *Hickcox* on the contract and fraud claims related to Horton's alleged promise to transfer 30,000 shares. (*See* 03/05/03 Order at 2–3 [Doc. # 223].) The jury awarded Hickcox $87,500.00 in compensatory damages (representing the value of Hickcox's portion of the 30,000 shares as stipulated by the parties at trial)

and $4,100,000.00 in punitive damages. (*Id.* at 3.) Judge Bolton later remitted the punitive damage award to $1,000,000.00 but rejected other efforts to overturn the verdict. (*Id.*)

On May 21, 2002, Collins and Ryan moved this Court to reconsider its Order compelling arbitration with respect to its claims arising out of the alleged 30,000–share promise. (03/05/03 Order at 3.) They argued that those claims were not arbitrable. (*Id.* at 4–7.) They further argued that collateral estoppel barred relitigation of issues relating to those claims and that the issue of collateral estoppel should be decided by a judge rather than an arbitrator. (*Id.* at 7–14.) The Court denied the motion on March 5, 2003, finding that both the claims and the question of collateral estoppel should be submitted to the arbitrators. (*Id.* at 15.)

Collins and Ryan arbitrated their claims before a panel of three arbitrators in May 2003. Before the evidentiary hearing, they asked the arbitrators to apply collateral estoppel to their contract and fraud claims involving Horton's alleged promise of 30,000 shares, based on the *Hickcox* judgment. (*See* Exh. F. to Pls.' Mot.) In an order dated April 9, 2003, the arbitrators refused to treat the *Hickcox* judgment as final because the judgment was on appeal. The relevant text of the order reads as follows:

> "The arbitrators have considered all of the pleadings and documents that the parties have agreed might be considered in addressing the argument of Plaintiffs Collins and Ryan that collateral estoppel (issue preclusion) should be attributed in this arbitration to the resolution of various issues against Defendant D.R. Horton in the Hickcox case."

> "Although the argument for collateral estoppel to at least some issues might be compelling if this were an appealable proceeding in a court of law, the arbitra-

tors conclude that collateral estoppel should *not* be applied in this binding arbitration. The reason is that an appeal is pending in the Hickcox matter, an appeal that we gather will not be resolved until well beyond the projected end of the current proceeding. We recognize that the pendency of—and possible reversal in—an appeal would not necessarily deprive a judgment of preclusive effect in a collateral proceeding in a court of law. There, the availability of an appeal of the second proceeding would permit the estoppel to be undone and the second judgment to be set aside if the prior judgment were ultimately reversed. Practicality and fairness suggest a different conclusion in this binding arbitration, however, in which the estoppel, if now ordered, cannot later be undone if the Hickcox judgment is later reversed. Such, in any event, is our understanding, and on the basis of that understanding, we rule as follows:

Subject to reconsideration if the Hickcox appeal is resolved before the conclusion of these proceedings, IT IS ORDERED denying the motion of Plaintiffs Collins and Ryan that collateral estoppel be attributed in this matter to issues resolved against Defendant D.R. Horton in the Hickcox case."

(Exh. G. to Pl.'s Mot.)

On October 5, 2003, the arbitration panel issue its Final Award. (Exh. H. to Pls.' Mot.) The panel found for Collins and Ryan on the breach-of-contract claims related to wages and awarded $806,344.00 to Collins and $917,574.00 to Ryan, plus attorneys' fees, costs, and interest. (*Id.*) On the contract and fraud claims arising out of the alleged 30,000–share promise, however, the arbitrators reviewed the evidence and

found against Collins and Ryan—a result that appears inconsistent with the verdict and judgment in the *Hickcox* action. (*Id.*)

On October 29, 2003, Collins and Ryan filed the instant Motion, seeking to confirm the portion of the arbitration award that was in their favor (the award on the wage claims) and to vacate the portion of the award that was not in their favor (the denial of the contract and fraud claims related to the 30,000 shares). With respect to the award on the wage claims, Collins and Ryan ask the Court to confirm that interest accrues on their gross (and not after-tax) wages. With respect to the alleged 30,000–share promise, Collins and Ryan argue that the arbitrators acted in manifest disregard of the law by failing to apply collateral estoppel. They ask that the Court enter judgment in their favor on those claims and award compensatory and punitive damages.

Horton filed its Response on December 2, 2003. As a preliminary matter, it argues that the Court lacks jurisdiction over the Plaintiffs' Motion because: (1) final judgment was deemed entered in this case no later than August 5, 2003, and (2) Plaintiffs' Motion does not comply with the notice and service provisions of 9 U.S.C. § 9. As for the issue concerning interest, Horton argues that the matter should be resubmitted to the arbitrators. Concerning the 30,000–share promise, Horton points to the narrow standard of review (manifest disregard) and asserts that the arbitrators decision fell within that standard.

In their Reply in support of their Motion, Collins and Ryan for the first time argued that Horton had waived the argument that interest should be paid on net rather than gross wages.[1] They also for

---

**1.** As Collins and Ryan later pointed out, their waiver argument was discussed in Exhibit K to their Motion, though not in the body of their memorandum of facts and law as required by Local Civil Rule 7.2. This is not sufficient to put the Court on notice of the argument. *See Greenwood v. FAA,* 28 F.3d

the first time argued that the Court should award them interest at the statutory rate of 10% on any unpaid liquidated amounts pursuant to Ariz.Rev.Stat. § 44–1201. The Court, in its discretion, decided to hear these arguments and on September 29, 2004 ordered the parties to provide supplemental briefing. The briefing is now complete, and the Court now turns to the Motion.

## DISCUSSION

### I. Jurisdiction

■ At the outset, the Court rejects Horton's challenge to this Court's jurisdiction to review and enter judgment on the arbitrator's award. Horton's first argument—that this case number is "long over"—turns on a mistaken view of finality. While it is true that the Court dismissed Plaintiffs' claims in favor of arbitration on March 3, 2004, and that judgment was deemed entered pursuant to Fed.R.Civ.P. 58(b) no later than August 4, 2003, courts have held that once a court obtains jurisdiction in an action and enters an order compelling arbitration, that court retains jurisdiction with respect to subsequent motions to confirm or vacate. *See Smiga v. Dean Witter Reynolds, Inc.,* 766 F.2d 698, 705 (2d Cir.1985); *T & R Enter. v. Continental Grain Co.,* 613 F.2d 1272, 1279 (5th Cir. 1980); *Allen Group, Inc. v. Allen Deutschland GMBH,* 877 F.Supp. 395, 399 (W.D.Mich.1994); *Tesoro Petroleum Corp. v. Asamera,* 798 F.Supp. 400, 403 (W.D.Tex.1992). Although there is no Ninth Circuit case on point, the Court has not found any authority to the contrary. Plaintiffs' Motion satisfies jurisdictional requirements.

971, 977 (9th Cir.1994) (court reviews only issues specifically and distinctly argued in a

■ Horton's next argument—that Plaintiffs' Motion is procedurally defective because it was not filed and served precisely in the manner set forth in section 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9—is similarly unpersuasive. 9 U.S.C. § 9 requires parties seeking confirmation of an arbitration award to file an "application" for confirmation in the district court within which the award was made and to serve notice of the application upon the adverse party. If the adverse party is a nonresident, then "notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court." 9 U.S.C. § 9. Once notice of the application is served, "the court shall have jurisdiction of such party as though he had appeared generally in the proceeding." *Id.*

Horton's complaint that Plaintiffs' filed a "motion" rather than an "application" elevates form over substance. Although Plaintiffs' Motion was not labeled an "application," the Ninth Circuit has held in related situations that " 'nomenclature is not controlling.' " *W. Employers Ins. Co. v. Jeffries & Co.,* 958 F.2d 258, 260–61 (9th Cir.1992) (quoting *Sea Ranch Ass'n v. Cal. Coastal Zone Conservation Comm'ns,* 537 F.2d 1058, 1061 (9th Cir.1976)). The Motion meets the requirements of Rule 7(b)(1) of the Federal Rules of Civil Procedure—it states with particularity the grounds for the motion and the relief sought. There is no question that Horton was on notice of Plaintiffs' intent. It filed an opposition to Plaintiffs motion and clearly comprehends the relief requested. Further, Rule 7(b)(1) specifically states an "application to the court for an order shall be by motion." Under these circum-

party's brief)

stances, the fact that Plaintiffs' did not call their papers an "application" is immaterial.

 The fact that Plaintiffs served their papers by mail rather than by a U.S. Marshal is also of no consequence. The parties agreed to waive formal service by stipulating in §§ 13 and 16 of their employment agreements to notice by mail and to the American Arbitration Associations Rules and Regulations, which state, "for any court actions in connection" with the arbitration, "each party shall be deemed to have consented" to service by mail. (*See* Exhs. 1 and 2 to Pls.' Mot.) Plaintiffs provided sufficient and legally appropriate notice to Horton by mailing a copy of their Motion to Horton's counsel.

## I. The Motion to Confirm and Vacate

### A. Standard of Review

 Courts play a limited role in reviewing arbitrator's decisions. Larry E. Edmonson, *Domke on Commercial Arbitration* § 38:1 (3d ed.2003). "Since the goal of arbitration is to provide the parties an alternative to a lengthy and costly litigation process, a court reviewing an arbitration award is more deferential to the arbitrator's decision than an appellate court would be in reviewing a decision of a trial court." *Id.* "This deference is designed to prevent the arbitration process from being 'transformed from a commercially useful alternative method of dispute resolution into a burdensome additional step on the march through the court system.'" *Id.* (quoting *Flexible Mfg. Sys. Pty Ltd. v. Super Prods. Corp.*, 86 F.3d 96, 100 (7th Cir.1996).

 Section 9 of the FAA provides that a district court "must grant [an order confirming the decision of the arbitrator] unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. Section 10 of the FAA, 9 U.S.C. § 10, sets out four very narrow grounds upon which courts

may vacate commercial arbitration awards. Those grounds are: "(1) where the award was procured by corruption, fraud or undue means; (2) where there was evident partiality or corruption on the part of the arbitrators; (3) where the arbitrators were guilty of misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10.

On its face, § 10 of the FAA does not sanction judicial inquiry into the merits of commercial arbitration awards. Over time, however, courts have articulated a variety of non-enumerated grounds that, in rare circumstances, justify the nullification of a procedurally proper arbitral award. The most widely recognized non-enumerated ground is the "manifest disregard of the law" standard. That standard—the sole ground for vacatur raised in the Plaintiffs' Motion—was first articulated in *dicta* in the United States Supreme Court's opinion in *Wilko v. Swan*, 346 U.S. 427, 436–37, 74 S.Ct. 182, 98 L.Ed. 168 (1953), *overruled on other grounds Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). There, the Court remarked that "the interpretations of the law by the arbitrators *in contrast to manifest disregard*, are not subject, in the federal courts, to judicial review for error in interpretation." *Id.* (emphasis added). Although the Supreme Court has not since given guidance on the contours of the standards, the federal circuit courts have incorporated the rule into arbitration jurisprudence.

 The manifest disregard standard is "both limited and highly deferential." *Sheet Metal Workers' Int'l Ass'n v. Madison Indus., Inc.*, 84 F.3d 1186, 1190 (9th Cir.1996). Satisfaction of the standard re-

quires "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand and apply the law." *San Martine Compania De Navegacion, S.A. v. Saguenay Terminals Ltd.*, 293 F.2d 796, 801 (9th Cir. 1961). A court may not reverse an arbitration award even in the face of an erroneous interpretation of the law. *A.G. Edwards v. McCollough*, 967 F.2d 1401, 1403 (9th Cir.1992). Rather, to demonstrate manifest disregard, the moving party must show that the arbitrator "underst[oo]d and correctly state[d] the law, but proceed[ed] to disregard the same." *San Martine Compania De Navegacion*, 293 F.2d at 801.

## B. Analysis

### 1. Confirmation of the Award on the Wage Claims

 Before turning to whether the arbitrators' refusal to address the merits of the Plaintiffs' collateral estoppel argument constituted manifest disregard, the Court turns first to the question of whether it should confirm that portion of the arbitration award related to Plaintiffs' wage claims and request for fees and costs. The arbitration panel found in favor of Collins and Ryan on the wage claims and awarded $806,344.00 to Collins and $917,574.00 to Ryan, plus attorneys' fees, costs, and interest. Plaintiffs request that the Court enter partial final judgment on this portion of the award under 9 U.S.C. § 9 and Rule 54(b) of the Federal Rules of Civil Procedure. Three issues require the Court's resolution: (1) whether Plaintiffs' request for partial confirmation has been rendered moot by Horton's payment of the amounts not in dispute, (2) whether interest must be paid on the gross (pre-tax) or net (post-tax) amount of the award, and (3) whether Plaintiffs' are entitled to pre-confirmation, post-award interest on any unpaid amounts.

Horton argues that Plaintiffs' request for confirmation is spurious because Plaintiffs have already been paid the arbitration award, with the exception of the amounts at issue in the parties dispute over interest. This argument is unavailing. Regardless of whether the undisputed amounts have already been paid, Plaintiffs are still entitled to an order confirming those amounts. 9 U.S.C. § 9 is phrased in mandatory terms. It provides that, upon application, a district court *"must* grant [a confirmation] order" unless the arbitration award is modified, vacated, or corrected. 9 U.S.C. § 9 (emphasis added). The mere fact that Horton has satisfied a portion of its obligation under the arbitration award does not divest the court of authority to confirm that portion of the award—satisfaction and confirmation are separate issues. *See District Council No. 9 v. APC Painting, Inc.*, 272 F.Supp.2d 229, 239 (S.D.N.Y.2003) (holding that the fact that the defendant had satisfied the arbitration awards at issue was irrelevant to whether the court should confirm the awards under 9 U.S.C. § 9.)

 As for the parties' dispute concerning whether Horton must pay interest on the gross or net amount of the award, Horton has waived the argument that interest should be paid only on net wages. The record shows that the arbitration panel issued an Interim Award on July 31, 2003, awarding $806,344.00 to Collins and $917,574.00 to Ryan. (Exh. 1 to Pls.' Surreply in Supp. of Their Mot.) After the arbitration panel issued its Interim Award but before it issued the Final Award, Plaintiffs asked the panel to award interest on all amounts due them. (Exh. 5 to Pls.' Reply in Supp. of Their Mot. at 5 & Exh. C thereto.) In their application to the arbitrators, Plaintiffs used the gross amount of the award as the basis for their interest calculations. (*Id.*) In response, Horton

submitted its own interest calculations— also based on the gross wage award—and disputed only the interest *rate* calculation. (Exh. 6 to Pls.' Reply in Supp. of Their Mot. at 29 & Exh. D thereto.) With the parties apparently in agreement on the amount to which interest would be applied, the panel issued a Final Award that specifically addressed the interest *rate*. Consistent with parties' previous submissions, the Final Award granted the Plaintiffs prejudgment interest on the *entire* principal sum awarded to them, stating: "Horton shall pay to Plaintiff Collins the principal sum of . . . . $806,344.00 [and $917,574.00 to Ryan], plus interest [on] each component of this sum." (Exh. H to Pls.' Mot. at 2–3, 5.)

Horton now seeks to retreat from its tacit acceptance in arbitration of the gross wage award as the basis for the interest calculations. It may not do so now. Federal courts have taken a dim view of parties raising arguments before the district court that were not made before the arbitrators. It is well settled that "[p]arties to arbitration proceedings cannot sit idle while an arbitration decision is rendered and then, if the decision is adverse, seek to attack the award collaterally on grounds not raised before the arbitrator." *USWA v. Smoke Craft, Inc.*, 652 F.2d 1356, 1360 (9th Cir.1981). The utility of settling disputes by arbitration would be seriously undermined if the parties kept arguments from the arbitrators and then later attempted to undermine the award in federal court using those arguments. Horton never argued to the arbitrators, as it could have, that interest should be paid on net wages rather than gross wages. In fact, it specifically used gross wages when making its interest calculations. Horton's argument that interest should be paid only on net wages has been waived.

Having resolved that Plaintiffs are entitled to interest on the gross wage award,

the Court next addresses Plaintiffs' request for post-award, pre-confirmation interest on the unpaid interest. Citing Ariz. Rev.Stat. § 44–1201, Plaintiffs argue that they are entitled to interest as a matter of right at the rate of ten percent per annum from the date of the award through the date of confirmation on the amount of interest disputed in this Motion. Horton argues that it owes no additional interest because the disputed amount was not liquidated, in light of the parties' disagreement over the amount of interest owed and the need for this Court's intervention. It further argues that, even if the amount was liquidated, its unconditional tender of the undisputed amount of the award stopped interest from accruing on the disputed portion.

■ State law determines entitlement to, and the rate of, post-award, pre-confirmation interest in diversity actions enforcing arbitration awards under the FAA. *Northrop Corp. v. Triad Int'l Marketing S.A.*, 842 F.2d 1154, 1155 (9th Cir. 1988). Under Arizona law, which the parties agree applies, " 'prejudgment interest on a liquidated claim is a matter of right.' " *AMHS Ins. Co. v. Mut. Ins. Co. of Ariz.*, 258 F.3d 1090, 1103 (9th Cir.2001) (quoting *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 508, 917 P.2d 222, 237 (1996) (en banc)). Section 44–1201 of the Arizona Revised Statutes sets the interest rate at ten percent per annum. Where, however, a debtor in good faith contests the amounts due on a claim but makes an unconditional tender of the amount she contends is in fact owed, she stops interest from accruing on the disputed amounts. *Homes & Son Const. Co., Inc. v. Bolo Corp.*, 22 Ariz.App. 303, 306, 526 P.2d 1258, 1261 (Ariz.App.1974).

■ Plaintiffs are entitled to interest on the unpaid interest amount from October 5, 2003, the date of the Final Award, to

October 24, 2003, when Horton wire transferred the undisputed amounts due. First, the Court rejects Horton's argument that the interest owed was not liquidated. An amount is liquidated when it becomes capable of exact calculation. *Ry–Tan Constr., Inc. v. Wash. Elem. Sch. Dist. No. 6*, 93 P.3d 1095, 208 Ariz. 379, 93 P.3d 1095, 1119–20 (Ariz.Ct.App.2004). The arbitrators granted pre-award interest on the entire principal sum awarded to Plaintiffs (the gross wage award). That interest was calculable as of the date of the Final Award and therefore liquidated, triggering interest as a matter of right under Ariz.Rev.Stat. § 44–1201. Horton, however, stopped the clock on statutory interest October 23, 2003, when it paid all undisputed amounts owed—$1,015,808.72 to Collins and $1,133,677.82 to Ryan. *See Homes & Son Const. Co., Inc.*, 22 Ariz.App. at 306, 526 P.2d at 1261. There is no indication that Horton acted in bad faith in disputing the amount of interest owed. Plaintiffs thus are not entitled to statutory interest after October 23, 2003.

## 2. The Motion to Vacate

Plaintiffs' challenge to the arbitrators refusal to give the *Hickcox* judgment finality raises three main issues. First, if the parties had litigated their dispute in court rather than in an arbitral forum, would the refusal constitute reversible error? Second, were the arbitrators bound to give the *Hickcox* judgment preclusive effect or could they dispense with preclusion on fairness and practicality grounds? Third, assuming the arbitrators were required to treat the *Hickcox* judgment as final, did they manifestly disregard the law by failing to do so? The Court addresses each of these issues in turn.

### a. Pending Appeals Do Not Deprive a Judgment of Preclusive Effect

There is no doubt that if the parties' dispute had been decided in court rather than in arbitration, the Court would have been required to treat the *Hickcox* judgment as final. The arbitrators did not accord the *Hickcox* judgment finality because of the pending appeal in that matter. "The bare act of taking an appeal," however, "is no more effective to defeat preclusion than a failure to appeal." 18A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice & Procedure: Jurisdiction 2d.* § 4433 (2002). A final judgment retains all of its res judicata and collateral estoppel consequences pending decision of the appeal, apart from rare occasions when the appeal constitutes a proceeding *de novo. Id.; see also Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir.1988) (stating that a pending appeal does not affect a judgment's finality for preclusion purposes). Thus, if this action had been decided this Court rather than arbitrated, the failure to accord the *Hickcox* judgment finality would have constituted reversible error.

Nevertheless, substantial difficulties arise from the rule that a trial court judgment retains its preclusive effects while an appeal is pending. "The major problem is that a second judgment based upon the preclusive effects of the first judgment should not stand if the first judgment is reversed." Wright, Miller & Cooper, *supra*, § 4433. "[I]n some cases, litigants and the courts have collaborated so ineptly that the second judgment has become conclusive even though it rested solely on a judgment that was later reversed." *Id.* (citing *Reed v. Allen*, 286 U.S. 191, 196–201, 52 S.Ct. 532, 76 L.Ed. 1054 (1932)). Wright, Miller, and Cooper counsel that "[t]his result should be avoided, whether by delaying further proceedings in the second action pending conclusion of the appeal in the first action, by a protective appeal in the second action that is held open pending determination of the appeal

in the first action, or by a direct action to vacate the second judgment." *Id.*

The arbitrators in this case recognized this problem; however, they chose to resolve it by dispensing with the *Hickcox* judgment and trying the claims related to the 30,000–share promise as if there had been no judgment (subject to reconsideration if the *Hickcox* appeal was resolved before the conclusion of the proceedings). Although Plaintiffs' argue that this decision was misguided, there are at the very least plausible arguments in support of it. None of the options suggested by Wright, Miller and Cooper work particularly well in the arbitration context. Staying resolution of the *Collins* arbitration pending an appeal in *Hickcox* would have undermined one of the main advantages of arbitration—avoidance of the delay of litigation. Delay is often "justice denied." Edmonson, *supra*, § 1.6. In contrast to the traditional adversarial method of dispute resolution, arbitration is intended to resolve disputes in a quick and cost-effective manner. *Id.*

Further, the parties would not have been able to vacate or reopen the arbitration award if the arbitrators had applied collateral estoppel on the basis of the *Hickcox* judgment and the *Hickcox* judgment was later reversed on appeal. When an arbitration award has been made, the authority of the arbitrators comes to an end. Edmonson, supra, § 37.2. A completed award generally cannot be modified, changed, or supplemented, except to clarify ambiguities in the award and mistakes apparent on the face of the award. *Id.* § 40.4. There is no right to appeal the merits of an arbitration award absent the narrow grounds discussed in Section I(A) above, none of which would allow the award to be reopened on the basis of a reversal in *Hickcox.* And while Rules 59 or 60 of the Federal Rules of Civil Procedure might provide a procedural basis for a federal court to reopen a judgment that was based on collateral estoppel or res judicata if the judgment in the first action was reversed, these Rules do not apply to arbitrations. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1133 (9th Cir.2000) (stating that a judgment under § 13 of the FAA is not subject to reopening and challenge under Rules 59 and 60). There are thus colorable arguments to support the position taken by the arbitrator's here.

At the same time, there are strong arguments in favor of applying collateral estoppel and res judicata in this situation as well. As Wright, Miller, & Cooper point out, "[d]espite the manifest risks of resting preclusion on a judgment that is being appealed, the alternative of retrying the common claims, defenses, or issues is even worse." Wright, Miller & Cooper, *supra,* § 4433. "All of the values served by res judicata [and collateral estoppel] are threatened or destroyed by the burdens of retrial, the potential for inconsistent results, and the occasionally bizarre problems of achieving repose and finality that may arise." *Id.* These difficulties are so great the federal courts have adopted the present rule: preclusion applies pending appeal, despite potential difficulties. Courts have found, quite simply, that benefits of giving a judgment preclusive effect pending appeal outweigh any risks of a later reversal of that judgment. As Wright, Miller & Cooper put it: "Although there are disadvantages to relying on preclusion in such circumstances, the advantages are more important." Wright, Miller & Cooper, *supra,* § 4433 n. 24.

The disadvantages of denying a judgment preclusive effect pending appeal are apparent in this litigation. While the arbitrators likely intended to simplify the proceedings, they may have done just the opposite—require the parties to litigate is-

sues that had long ago been decided. Further, they may also have produced an inconsistent result: the plaintiffs in *Hickcox* recovered on the 30,000–share promise while the Plaintiffs in this action—to whom the same promise was made at the same time—did not.[2]

### b. Could the Arbitrators Refuse to Treat the *Hickcox* Judgment as Final?

■ Because the arbitrators had at least plausible arguments in favor of their position, the question then becomes: were they free to refuse to treat the *Hickcox* judgment as final on the basis of fairness and practicality? Stated differently, does the fact that this was an arbitration make a difference in terms of applicability of collateral estoppel? The answer is no— under federal law the arbitrators were bound to give the *Hickcox* judgment preclusive effect.

The Ninth Circuit has not specifically addressed whether arbitrators are bound by prior federal court decisions under the doctrines of collateral estoppel and/or res judicata, but other federal courts that have considered the issue have uniformly held that they are so bound. *See, e.g., Aircraft Braking Sys. Corp. v. Local 856*, 97 F.3d 155, 159 (6th Cir.1996) (holding that "arbitrators are not free to ignore the preclusive effect of prior judgments, although they generally are entitled to determine in the first instance whether to give the prior judicial determination preclusive effect"); *Miller v. Runyon*, 77 F.3d 189, 193 (7th Cir.1996) (Posner, J.) (noting that while

the decisions are few, all but one, a state court case from Minnesota, support the applicability of res judicata and/or collateral estoppel in arbitrations); *John Morrell & Co. v. Local Union 304A*, 913 F.2d 544 (holding that collateral estoppel bars an arbitrator from reconsidering issues decided in prior judicial proceedings). The reasons for requiring arbitrators to apply res judicata and collateral estoppel are the same as those underlying the doctrines themselves—finality, protection of judgments, prevention of duplicative litigation, and avoidance of inconsistent results.

In this case, the arbitrators refused to consider the *Hickcox* judgment as final because fairness and practicality, in their view, counseled otherwise. Putting aside the case law discussed above for a moment and for the sake of understanding the arbitrators' decision, the arbitrators reliance on their sense of justice and equity does in fact have underpinnings in the ethos and law of arbitration. Arbitration is intended to provide a quicker and less expensive alternative to litigation. "It is similar to litigation in that it involves an adjudicative process including the presentation of proofs and arguments and the making of a decision by a third party." Murray S. Levin, *The Role of Substantive Law in Business Arbitration and the Importance of Volition*, 35 Am. Bus. L.J. 105, 106 (1997). But it is different in other respects. "Notably, the disputants, through their agreement to arbitrate, have the opportunity to design specific features of the process." *Id.* In court proceedings, for instance, there is a permanent body of

2. The Court expresses no opinion on whether collateral estoppel in fact bars relitigation of issues related to the alleged 30,000 share promise, though as the arbitrators acknowledged in *dicta*, "the argument for collateral estoppel to at least some issues might be compelling ..." (Exh. G. to Pl.'s Mot.) The issue before the Court at this stage is not whether Plaintiffs established all of the elements of collateral estoppel (full and fair opportunity to litigate, actually litigated and necessary to judgment, final judgment, and party or privity), but rather whether the arbitrators manifestly disregarded the law by refusing to even consider Plaintiffs' collateral estoppel argument because the *Hickcox* judgment was on appeal.

procedural law which determines rights and obligations within a traditional legal framework. In agreements to arbitrate, however, the disputants can and do set the procedural rules. *Id.*

"Additionally, the disputants can designate the decision-making principles that are to be applied by the arbitrators in reaching their decisions"—the FAA and other arbitration statutes are silent on the role that substantive law is to play in arbitral decision-making. *Id.* This feature "raises some uncertainty about the role of substantive law in arbitration." *Id.* In a court of law, the judge decides the case based on the applicable rules of substantive law. Judges strive to apply the law correctly because a prejudicial error can result in an appeal, negating a judgment. "In arbitration, arbitrators may be, but usually are not, directed to establish their decision on principles of substantive law." *Id.* Surprisingly, the extent to which arbitrators should and do apply substantive law in deciding cases remains unclear. *Id.*

Many state courts interpreting their own states' arbitration statutes, for instance, have expressed support for a process that of arbitral decision-making that is not controlled by substantive law. The California Supreme Court has held that "arbitrators, unless specifically required to act in conformity with rules of law, may base their decision on broad principles of justice and equity, and in doing so may expressly or impliedly reject a claim that a party might successfully have asserted in a judicial action." *Sapp v. Barenfeld,* 34 Cal.2d 515, 212 P.2d 233, 239 (1949). Other state courts have held that the arbitrators "may do justice as [they] see[ ] it, applying [their] own sense of law and equity," *Silverman v. Benmor Coats, Inc.,* 61

N.Y.2d 299, 473 N.Y.S.2d 774, 461 N.E.2d 1261, 1266 (1984), may apply their own "notion of justice without regard to the applicable law," *David Co. v. Jim W. Miller Const., Inc.,* 428 N.W.2d 590, 594 (Minn.Ct.App.1988), and may "fashion the law to 'fit the facts before them,'" *Israel Discount Bank Ltd. v. Rosen,* 169 A.D.2d 650, 565 N.Y.S.2d 29, 30 (N.Y.App.Div. 1991) (quoting *Channel Textile Co. v. Adams,* 161 A.D.2d 409, 555 N.Y.S.2d 338, 338 (N.Y.App.Div.1990)).

Similarly, the American Arbitration Association ("AAA") has articulated rules that suggest that arbitrators should be less constrained to follow the law than judges and should be free to base decisions on equitable and practical considerations and on personal wisdom and experience.[3] Rule 43 of the AAA's National Rules for the Resolution of Employment disputes, for instance, states that in making an award an arbitrator is free to "grant any remedy or relief the arbitrator deems just and equitable." Am. Arbitration Ass'n, Nat'l Rules for the Resolution of Employment Disputes, Rule 43 (2004). "While this rule and other similarly worded AAA rules are more explicitly focused on the remedial function, they emphasize the arbitrator's sense of justice and equity, and thereby at least acknowledge that arbitrators are not obligated to apply the law rigidly." Levin, *supra,* at 114.

Other AAA publications provide additional insight on the perceived relationship between arbitration, legal rights, and the authority of arbitrators. In *Business Arbitration—What You Need to Know* 31 (rev.3d ed.1987), Robert Coulson, the former president of the AAA, remarks:

It is sometimes said that arbitrators are not bound by the law in reaching their

---

**3.** The AAA rules applied in this arbitration. The parties' employment agreements provided that any disputes under the agreements "shall be settled ... in accordance with the applicable rules and procedures of the American Arbitration Association." (*See* Exh. 1 to Pls.' Mot. at 17.)

decisions. This is misleading. Commercial arbitrators are carefully briefed by each opposing lawyer as to the applicable law. At the same time, attorneys argue the equitable and practical considerations that should be weighed by the arbitrator. It is improper for an arbitrator to refuse to listen to any pertinent arguments raised by either counsel. The arbitrator should carefully consider the legal arguments, even though not required to make findings on legal issues.

As Levin, *supra* at 117, observes, "this cautious statement epitomizes the ambiguous character of the interplay between law and arbitration." On the one hand, "we are told, [that arbitrators] are briefed on the law by adversaries and should listen to and consider legal arguments." *Id.* at 117–18. "[A]t the same time, the arbitrators are required to weigh other 'equitable and practical considerations,' and they are not required to report specific findings." *Id.* at 118. "Functioning primarily in this AAA environment, arbitrators have grappled with a process that includes presentation of law, but allows for, or at least tolerates, an overriding personal sense of justice." *Id.*

Against this backdrop, it is not surprising that the arbitrators grounded their refusal to accord the *Hickcox* judgment finality in fairness and practicality. Federal courts interpreting the FAA, however, have imposed a duty on arbitrators to follow the substantive law. John F.X. Peloso, *A Discussion of Whether Arbitrators Have a Duty to Apply the Law*, 949 PLI/Corp. 61, 63 (July–Aug.1996). The mani-

fest disregard of the law standard—which is not a basis for overturning an arbitration award in those jurisdictions that affirmatively hold that arbitrators are not required to base their decisions on the substantive law—presumes that arbitrators are bound by the law. *Id.* Further, the United States Supreme Court has stated that it assumes arbitrators will follow the law when ascertaining the basis for recovery in arbitration. In holding that pre-dispute arbitration agreements are enforceable, the Supreme Court, in *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 230–32, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), stated that "there is no reason to assume ... that arbitrators will not follow the law; although judicial scrutiny of arbitration awards necessarily is limited, such review is sufficient to ensure that arbitrators comply with the requirements of the [law]." More importantly—and more relevant with respect to the specific facts of this case—all federal courts that have considered the question have held that arbitrators are bound to give preclusive effects to prior federal court judgments. *See, e.g., Miller*, 77 F.3d at 193. The arbitrators were therefore not free to refuse to give the *Hickcox* judgment preclusive effect on the basis of their overriding sense of fairness and practicality.

**c. Did the Arbitrators Manifestly Disregard the Law?**

■ At the end of the day, the question is not whether the federal arbitrators erred, but whether they acted in manifest disregard of the law.[4] Manifest disregard

4. The Court may not, as Horton suggests, remand this matter to the arbitrators with instructions to consider the collateral estoppel issue. "Arbitrators are not and never were intended to be amenable to the 'remand' of a case for 'retrial' in the same way as a trial judge... It is [a] fundamental common law principle that once an arbitrator has made

and published a final award his authority is exhausted and he is *functus officio* and can do nothing more in regard to the subject matter of the arbitration." *McClatchy Newspapers v. Cent. Valley Typographical Union No. 46*, 686 F.2d 731, 733–34 (9th Cir.1982). Limited exceptions exist for clarification of an award,

of the law is more than mere error in the law. *San Martine Compania De Navegacion, S.A.*, 293 F.2d at 801. As discussed above, federal courts give wide deference to the decisions of arbitrators. A corollary of the strong federal policy favoring arbitration is that "arbitration awards are particularly insulated from judicial review." *Container Prods. Inc. v. United Steelworkers*, 873 F.2d 818, 819 (5th Cir.1989). Applying the deferential manifest disregard standard to the facts of this case, the Court finds that vacatur of the arbitration award is not warranted.

To demonstrate a manifest disregard of the law, Plaintiffs must show that the arbitrator understood and correctly stated the law, but then proceeded to ignore it. *San Martine Compania De Navegacion, S.A.*, 293 F.2d at 801. The "manifest disregard" of the law standard thus has two elements. "One element looks to the result reached in the arbitration and evaluates whether it is clearly consistent or inconsistent with the controlling law." Stephen L. Hayford, *Reining in the 'Manifest Disregard Standard': The Key to Restoring Order to the Law of Vacatur*, 1998 J. Disp. Resol. 117, 124 (1998). To satisfy this element, "a reviewing court must conclude that the arbitrator misapplied or failed to apply the relevant law touching upon the dispute before her in a manner that constitutes a blatant, gross error of law that is apparent on the face of the award." *Id.* "[T]his component of the manifest disregard inquiry looks to an 'actus reus'-like dimension— the commission of a very serious error of law ... by the arbitrator." *Id.*

But an error of law, "no matter how obvious or outrageous a court may deem it to be, cannot alone justify vacatur." *Id.* "That conclusion requires evaluation of the second element of the 'manifest disregard' of the law standard—the arbitrator's

knowledge, her awareness of the relevant law and the manner in which she behaved in light of that knowledge." *Id.* This inquiry "takes the form of a two-dimensional 'mens rea'-like, state of mind determination." *Id.* That is, "the arbitrator must have been aware of the correct law and further must have consciously or intentionally chosen not to apply it to the facts of the case in rendering the award." *Id.* "Absent evidence in the record before the reviewing court reliably demonstrating that the arbitrator actually misapplied the relevant law and did so with knowledge of the error of that action and/or the intention to nullify the law or an awareness that he was doing so, vacatur is not appropriate." *Id.*

Here, Plaintiffs have satisfied the "actus reus" dimension of the manifest disregard of the law standard. As shown in the sections above, the arbitrators failure to accord the *Hickcox* judgment finality and concomitant refusal to address the merits of Plaintiffs' collateral estoppel argument constituted an error of law. Plaintiffs have not, however, satisfied the "mens rea" portion of the manifest disregard of the law test. To satisfy this element, the arbitrators must have understood that they were acting in error. *See San Martine Compania De Navegacion, S.A.*, 293 F.2d at 801. Here, there is no indication that the arbitrators understood that they were misapplying the law or intended to nullify the law when they decided to dispense with Plaintiffs' collateral estoppel argument on the basis of equitable considerations.

In fact, the evidence shows just the opposite—that the arbitrators misunderstood the law:

> "We recognize that the pendency of— and possible reversal in—an appeal would *not necessarily* deprive a judg-

---

completion of an incomplete award, and correction of mistakes that appear on the face of the award. *Id.* at 734. None of these exceptions apply here.

ment of preclusive effect in a collateral proceeding in a court of law. There, the availability of an appeal of the second proceeding would permit the estoppel to be undone and the second judgment to be set aside if the prior judgment were ultimately reversed. *Practicality and fairness suggest a different conclusion in this binding arbitration,* however, in which the estoppel, if now ordered, cannot later be undone if the Hickcox judgment is later reversed. Such, in any event, is *our understanding,* and on the basis of that understanding, we rule as follows . . ."

(Final Award, Exh. G. to Pl.'s Mot. (emphasis added).) The phrase "not necessarily" in the first sentence quoted above shows that the arbitrators did not recognize that the rule that a pending appeal does not deprive a judgment of preclusive effect has no exceptions. The second and third sentences, which attempt to distinguish the applicability of the rule in the arbitration context, show that the arbitrators did not understand the rule applies equally to arbitrations and to proceedings in a court of law. Finally, there is nothing in this paragraph to suggest that the arbitrators understood that general principles of fairness and practicality are not sufficient grounds to dispense with collateral estoppel under federal law. Rather, the arbitrators' decision indicates that they assumed that their invocation of fairness and practicality was perfectly acceptable and legal.

Given the AAA environment which encourages the arbitrators to weigh equitable and practical considerations, it is understandable that the arbitrators refused to treat the *Hickcox* judgment as final based on their view of justice and equity. Although Plaintiffs now complain that fairness and practicality are not grounds to refuse to apply collateral estoppel, there is no evidence in the record that they educated the arbitrators on this point. *See GMS Group, LLC v. Benderson,* 326 F.3d 75, 81 (2d Cir.2003) ("[T]he panel of arbitrators is a blank slate unless educated in the law by the parties.") Although the arbitrators committed an error of law, the Court cannot conclude that the arbitrators understood they were acting in error. It therefore cannot find that the arbitrators acted in "manifest disregard of the law."

Accordingly,

**IT IS ORDERED** that Plaintiffs Julie E. Collins and Robert B. Ryan's Motion to Confirm in Part [Doc. # 229–1] is **GRANTED IN PART** and **DENIED IN PART.** The Court hereby **CONFIRMS** the arbitration award in all respects. It **FURTHER CONFIRMS** that Plaintiffs Julie E. Collins and Robert B. Ryan are entitled to interest on the gross (not the net) amount of the wage award. The Court **FURTHER ORDERS** that Plaintiffs Julie E. Collins and Robert B. Ryan are entitled to interest at ten percent (10%) per annum on their respective unpaid interest from October 5, 2003 to October 24, 2003. The Court **DENIES** Plaintiffs' request for statutory interest past October 24, 2003.

**IT IS FURTHER ORDERED** that Plaintiff Julie E. Collins and Robert B. Ryan's Motion to Vacate in Part [Doc. # 229–1] is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff Julie E. Collins and Robert B. Ryan's Motion to Enter Judgment as a Matter of Law on Certain Contract and Fraud Claims Based on Collateral Estoppel [Doc. # 229–2] is **DENIED.**

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment promptly in accordance with this Order.