**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JULIE E. COLLINS; ROBERT B. RYAN,
individuals,
        *Plaintiffs-Appellants,*

v.

D.R. HORTON, INC., a Delaware
corporation,
        *Defendant-Appellee.*

No. 05-15737

D.C. No.
CV-99-00330-ROS

OPINION

Appeal from the United States District Court
for the District of Arizona
Roslyn O. Silver, District Judge, Presiding

Argued and Submitted
April 17, 2007—San Francisco, California

Filed September 24, 2007

Before: Dorothy W. Nelson, Consuelo M. Callahan, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Bea

## COUNSEL

Lawrence Allen Katz, Bennett Evan Cooper, and Elizabeth A. Schallop Call, Steptoe & Johnson LLP, for plaintiffs-appellants Julie E. Collins and Robert B. Ryan.

Lonnie J. Williams, Jr. and Deanna R. Rader, Quarles & Brady Streich Lang LLP, for Defendant-Appellee D. R. Horton, Inc.

## OPINION

BEA, Circuit Judge:

Julie E. Collins and Robert B. Ryan ("Appellants") appeal the district court's denial of their motion to vacate an arbitration award. Appellants contend their motion should have been granted because the arbitrators manifestly disregarded the law when deciding not to apply offensive non-mutual collateral estoppel[1] because judicial review of an arbitration award under the Federal Arbitration Act ("FAA") is more limited than judicial review of a district court judgment. We hold the arbitrators did not manifestly disregard the law because no "well defined, explicit, and clearly applicable" law existed to

---

[1]"Offensive non-mutual collateral estoppel is a version of the doctrine [of collateral estoppel] that arises when a plaintiff seeks to estop a defendant from relitigating an issue which the defendant previously litigated and lost against another plaintiff." *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 775 (9th Cir. 2003) (citing *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 (1979) ("Defensive use occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant.")).

be disregarded. *Carter v. Health Net of Cal., Inc.*, 374 F.3d 830, 838 (9th Cir 2004). Accordingly, we affirm.

## I.

Continental Homes Holding Corporation ("Continental") was a homebuilding and mortgage business headquartered in Arizona. In 1996, D.R. Horton, Inc. ("Horton"), a homebuilding company with operations in several states, expressed an interest in merging with Continental. Although Continental initially rebuffed Horton's merger proposals, Horton and Continental negotiated and entered into a merger agreement in 1997.

To make itself a more attractive merger partner, Continental entered into employment contracts with key employees designed to induce them to stay on with the merged company for at least that period of time sufficient to accomplish the merger and the related combination of operations. Among those Continental employees who entered into such employment contracts were Appellants and W. Thomas Hickcox ("Hickcox").[2] The employment contracts provided for severance packages if Appellants or Hickcox were terminated without cause or resigned "for good reason," such as a significant reduction in responsibility.

During merger negotiations, an issue arose concerning whether Continental employees would be able to accelerate vesting of their unvested Continental stock options prior to or as part of the merger. Both Appellants and Hickcox contend Horton overcame this issue by verbally promising to give 30,000 shares of Horton stock to be divided by the group of Continental managers holding unvested Continental stock options, including Appellants and Hickcox.

---

[2]Collins was Continental's Chief Financial Officer, Treasurer, and Secretary. Ryan was the Vice President of Management Information Systems and a member of the Board of Directors. Hickcox was Continental's Chief Executive Officer.

The merger between Continental and Horton became effective in April 1998. Shortly after the merger, Horton terminated Hickcox without cause and Appellants resigned pursuant to the "for good reason" provisions in their employment contracts. Horton failed to honor the severance packages called for under both Appellants' and Hickcox's employment contracts. Appellants and Hickcox also contend Horton failed to honor its promise to give Continental's managers holding unvested Continental stock options 30,000 shares of Horton stock.

On February 22, 1999, Hickcox alone filed a diversity action against Horton in district court, alleging state law claims for breach of contract, failure to pay wages, promissory estoppel, and fraud. The same day, Appellants jointly filed a separate and distinct diversity action against Horton in the same district court, also alleging breach of contract, failure to pay wages, promissory estoppel, and fraud. Appellants and Hickcox made nearly identical breach of contract and fraud claims related to Horton's 30,000 share promise.

On May 14, 1999, pursuant to a mandatory arbitration clause in Hickcox's employment contract, Horton moved to dismiss Hickcox's case and compel arbitration. At the time, our precedent held that the FAA did not apply to employment contracts and, therefore, compulsory arbitration clauses in employment contracts were unenforceable.[3] *See Craft v.*

---

[3]In relevant part, the FAA states:

> A written provision in any maritime transaction or a *contract evidencing a transaction involving commerce* to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

*Campbell Soup Co.*, 177 F.3d 1083, 1093 (9th Cir. 1999). The district court, therefore, denied Horton's motion to compel arbitration in Hickcox's case.

After discovery and unsuccessful summary judgment motions, Horton moved to consolidate Appellants' and Hickcox's cases for trial on the basis that both cases involved Horton's alleged 30,000 share promise. The district court denied the motion because the difference between Appellants' and Hickcox's employment contract claims, i.e., resignation for good cause versus termination without cause, outweighed the benefit of consolidation. Hickcox's and Appellants' trials were set for March 12, 2002 and May 14, 2002, respectively. On March 28, 2002, a jury found Horton liable for breaching the severance package provisions of Hickcox's employment contract and fraud as to the making of the 30,000 share promise. The jury awarded Hickcox $87,500 in compensatory damages on the breach of contract claim, $87,000 in damages on the fraud claim, and $4,100,000 in punitive damages, which the district court ordered remitted to $1,000,000 in punitive damages.

Prior to the start of Appellants' trial, the district court granted a motion by Horton to compel arbitration of Appellants' case because the Supreme Court had reversed our precedent and held that arbitration clauses in employment contracts are enforceable under the FAA. *See Circuit City Stores*, 532 U.S. at 114.

---

9 U.S.C. § 2 (emphasis added).

In *Craft v. Campbell Soup Co.*, 177 F.3d 1083 (9th Cir. 1999), we held that the FAA did not apply to employment contracts because an employment contract is not a "contract evidencing a transaction involving interstate commerce." The Supreme Court overruled *Craft*, holding the phrase "contract evidencing a transaction involving interstate commerce" is not limited to commercial contracts and, therefore, includes employment contracts. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114 (2001).

Appellants' claims were arbitrated before a panel of three arbitrators. Appellants moved for summary judgment as to their 30,000 share claims, contending that offensive non-mutual collateral estoppel based on the judgment in Hickcox's case barred Horton from relitigating their 30,000 share claims. The arbitration panel denied Appellants' motion for summary judgment:

> Although the argument for collateral estoppel to at least some issues might be compelling if this were an appealable proceeding in a court of law, the arbitrators conclude that collateral estoppel should *not* be applied in this binding arbitration. The reason is that an appeal is pending in the Hickcox matter, an appeal that we gather will not be resolved until well beyond the projected end of the current proceedings. We recognize that the pendency of—and possibility of reversal in—an appeal would not necessarily deprive a judgment of preclusive effect in a collateral proceeding in a court of law. There, the availability of an appeal of the second proceeding would permit the estoppel to be undone and the second judgment to be set aside if the prior judgment were ultimately reversed. Practicality and fairness suggest a different conclusion in this binding arbitration, however, in which the estoppel, if now ordered, cannot later be undone if the Hickcox judgment is later reversed. Such, in any event, is our understanding, and on the basis of that understanding we . . . deny[ ] the motion of Plaintiffs . . . that collateral estoppel be attributed in this matter to issues resolved against [Horton] . . . in the Hickcox case.

Thereafter, the arbitrators found for Appellants on their breach of employment contract claims. The arbitrators, however, found for Horton on Appellants' claims arising from Horton's alleged 30,000 share promise.

Pursuant to 9 U.S.C. § 9,[4] Appellants filed in district court an application to vacate that portion of the arbitration award holding Appellants had "not established, either on grounds of breach of contract, promissory estoppel, or fraud, that Horton made an enforceable promise" to give 30,000 shares of Horton stock to Continental managers holding unvested Continental stock options. Appellants' application to vacate the arbitration award contended that the arbitrators displayed a manifest disregard for the law when deciding not to apply offensive non-mutual collateral estoppel to bar Horton from relitigating whether Horton made an enforceable 30,000 share promise.

The district court denied Appellants' application to vacate the arbitration award, holding that the arbitrators erred by not giving preclusive effect to Hickcox's judgment but that this error did not rise to the level of a manifest disregard for the law.

## II.

We review *de novo* the district court's denial of Appellants' motion to vacate the arbitration award. *See Woods v. Saturn Distrib. Corp.*, 78 F.3d 424, 427 (9th Cir. 1996). Our review, however, is necessarily limited: "Broad judicial review of

---

[4]In relevant part, § 9 of the FAA states:

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

9 U.S.C. § 9.

arbitration decisions could well jeopardize the very benefits of arbitration, [i.e., speed and informality,] rendering informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process." *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 998 (9th Cir. 2003) (en banc).

Under 9 U.S.C. § 10, a district court may vacate an arbitration award only:

> (1) where the award was procured by corruption, fraud or undue means; (2) where there was evident partiality or corruption on the part of the arbitrators; (3) where the arbitrators were guilty of misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. Although § 10 does not sanction judicial review of the merits of arbitration awards, we have adopted a narrow "manifest disregard of the law" exception under which a procedurally proper arbitration award may be vacated. This standard was first articulated in dicta in *Wilko v. Swan,* 346 U.S. 427, 436-37 (1953) ("[T]he interpretations of the law by the arbitrators *in contrast to manifest disregard*, are not subject, in the federal courts, to judicial review for error in interpretation." (emphasis added)). The manifest disregard exception requires "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand and apply the law." *San Martine Compania De Navegacion, S.A. v. Saguenay Terminals Ltd.,* 293 F.2d 796, 801 (9th Cir. 1961). Accordingly, we may not reverse an arbitration award even in the face of an erroneous interpretation of the law. *See A.G. Edwards v. McCollough,* 967 F.2d 1401, 1403 (9th Cir. 1992). Rather, to demonstrate manifest disregard, the moving party must show that the arbi-

trator "underst[oo]d and correctly state[d] the law, but proceed[ed] to disregard the same." *San Martine Compania De Navegacion*, 293 F.2d at 801.

**[1]** In short, "federal courts of appeals have repeatedly held, 'manifest disregard of the law' means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law. It must be clear from the record that the arbitrators recognized the applicable law and then ignored it. As such, mere allegations of error are insufficient." *Carter,* 374 F.3d at 838 (internal citations, quotation marks, and alterations omitted). Moreover, to rise to the level of manifest disregard "[t]he governing law alleged to have been ignored by the arbitrators must be *well defined, explicit, and clearly applicable*." *Id.* (emphasis added).

### III.

**[2]** We have "not specifically addressed whether arbitrators are bound by prior federal court decisions under the doctrines of collateral estoppel and/or res judicata[.]" *Collins v. Horton*, 361 F. Supp. 2d 1085, 1097 (D. Ariz. 2005). Other circuits, however, have held that where the prerequisites for collateral estoppel are satisfied arbitrators must give preclusive effect to prior federal judgments. *See, e.g.*, *Aircraft Braking Sys. Corp. v. Local 856*, 97 F.3d 155, 159 (6th Cir. 1996); *Miller v. Runyon*, 77 F.3d 189, 193 (7th Cir. 1996); *John Morrell & Co. v. Local Union 304A*, 913 F.2d 544 (8th Cir. 1990). We agree: "Arbitrators are not free to ignore the preclusive effect of prior judgments under the doctrines of res judicata and collateral estoppel, although they generally are entitled to determine in the first instance whether to give the prior judicial determination preclusive effect." *Aircraft Braking Sys. Corp.*, 97 F.3d at 159; *see also Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 499 (5th Cir. 1986) (reasoning that parties should be barred from seeking relief from an arbitration panel if res judicata principles would bar relief in federal

court because an arbitration award involves the entry of judgment by a court).

**[3]** These circuits, however, have not addressed the question presented here, i.e., whether arbitrators possess the same broad discretion possessed by district courts to determine when to apply offensive non-mutual collateral estoppel. As noted above, "[o]ffensive non-mutual collateral estoppel is a version of the doctrine [of collateral estoppel] that arises when a plaintiff seeks to estop a defendant from relitigating an issue which the defendant previously litigated and lost against another plaintiff." *Appling*, 340 F.3d at 775 (citing *Parklane Hosiery Co.,* 439 U.S. at 326). The Supreme Court has explained why district courts possess broad discretion in the application of offensive non-mutual collateral estoppel:

> Collateral estoppel, like the related doctrine of res judicata,[5] has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation. Until relatively recently, however, the scope of collateral estoppel was limited by the doctrine of mutuality of parties. Under this mutuality doctrine, neither party could use a prior judgment as an estoppel against the other unless both parties were bound by the judgment. Based on the premise that it is somehow unfair to allow a party to use a prior judgment when he himself would not be so bound, the mutuality requirement provided a party who had litigated and

---

[5]"Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action." *Parklane Hosiery Co., Inc.*, 439 U.S. at 326-27 n.5 (citations omitted).

lost in a previous action an opportunity to relitigate identical issues with new parties.[6]

By failing to recognize the obvious difference in position between a party who has never litigated an issue and one who has fully litigated and lost, the mutuality requirement was criticized almost from its inception. Recognizing the validity of this criticism, the Court in *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, [402 U.S. 313, 329 (1971)], abandoned the mutuality requirement, at least in cases where a patentee seeks to relitigate the validity of a patent after a federal court in a previous lawsuit has already declared it invalid.

\*          \*          \*

The *Blonder-Tongue* case involved defensive use of collateral estoppel—a plaintiff was estopped from asserting a claim that the plaintiff had previously litigated and lost against another defendant. The present case, by contrast, involves offensive use of collateral estoppel—a plaintiff is seeking to estop a defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff. In both the offensive and defensive use situations, the party against whom estoppel is asserted has litigated and lost in an earlier action. Nevertheless, several reasons have been advanced why the two situations should be treated differently.

First, offensive use of collateral estoppel does not promote judicial economy in the same manner as

---

[6]"It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard." *Parklane Hosiery Co., Inc.*, 439 U.S. at 327 (citations omitted).

defensive use does. Defensive use of collateral estoppel precludes a plaintiff from relitigating identical issues by merely switching adversaries. Thus defensive collateral estoppel gives a plaintiff a strong incentive to join all potential defendants in the first action if possible. Offensive use of collateral estoppel, on the other hand, creates precisely the opposite incentive. Since a plaintiff will be able to rely on a previous judgment against a defendant but will not be bound by that judgment if the defendant wins, the plaintiff has every incentive to adopt a "wait and see" attitude, in the hope that the first action by another plaintiff will result in a favorable judgment. Thus offensive use of collateral estoppel will likely increase rather than decrease the total amount of litigation, since potential plaintiffs will have everything to gain and nothing to lose by not intervening in the first action.

A second argument against offensive use of collateral estoppel is that it may be unfair to a defendant. If a defendant in the first action is sued for small or nominal damages, he may have little incentive to defend vigorously, particularly if future suits are not foreseeable. Allowing offensive collateral estoppel may also be unfair to a defendant if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant. Still another situation where it might be unfair to apply offensive estoppel is where the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result.[7]

---

[7]"If, for example, the defendant in the first action was forced to defend in an inconvenient forum and therefore was unable to engage in full scale discovery or call witnesses, application of offensive collateral estoppel may be unwarranted. Indeed, differences in available procedures may

We have concluded that the preferable approach for dealing with these problems in the federal courts is not to preclude the use of offensive collateral estoppel, but to *grant trial courts broad discretion to determine when it should be applied.*

*Parklane Hosiery Co., Inc.*, 439 U.S. at 326-31 (citations, footnotes, internal quotation marks omitted) (emphasis added). Significantly, the Supreme Court expressly held: "The general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where, *either for the reasons discussed above or for other reasons*, the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel." *Id.* at 331 (emphasis added).

**[4]** Accordingly, even when the traditional prerequisites for collateral estoppel are satisfied,[8] trial courts have "broad discretion" to decide whether to apply offensive non-mutual collateral estoppel. *Id.* Indeed, where "the application of offensive collateral estoppel would be unfair to a defendant, a trial judge *should not* allow the use of collateral estoppel."

---

sometimes justify not allowing a prior judgment to have estoppel effect in a subsequent action even between the same parties, or where defensive estoppel is asserted against a plaintiff who has litigated and lost." *Parklane Hosiery Co., Inc.*, 439 U.S. at 331 (citations omitted). As discussed below, rather than affording Horton with additional procedural opportunities, the FAA's narrow scope of review deprived Horton of the procedural opportunities available in district court to attack a collateral estoppel-based judgment should the underlying judgment be vacated or reversed on appeal.

[8]The prerequisites for offensive non-mutual collateral estoppel are whether "(1) there was a full and fair opportunity to litigate the identical issue in the prior action; (2) the issue was actually litigated in the prior action; (3) the issue was decided in a final judgment; and (4) the party against whom [collateral estoppel] is asserted was a party or in privity with a party in the prior action." *Syverson v. IBM*, 472 F.3d 1072, 1078 (9th Cir. 2007) (citations omitted).

*Id.* (emphasis added); *see also Eureka Fed. Sav. & Loan Ass'n v. Am. Cas. Co.*, 873 F.2d 229, 234 (9th Cir. 1989) ("[I]t is inappropriate to apply collateral estoppel when its effect would be unfair.").

**[5]** We discern no basis for denying arbitrators the same broad discretion possessed by district courts. Accordingly, we hold (1) "[a]rbitrators are not free to ignore the preclusive effect of prior judgments under the doctrines of res judicata and collateral estoppel," *Aircraft Braking Sys. Corp.*, 97 F.3d at 159, (2) arbitrators are entitled to determine in the first instance whether the prerequisites for collateral estoppel are satisfied, *id.*, and (3) arbitrators possess broad discretion to determine when they should apply offensive non-mutual collateral estoppel. *See Parklane Hosiery Co., Inc.*, 439 U.S. at 331.

IV.

We have held that a final judgment retains its collateral estoppel effect, if any, while pending appeal. *See Tripati v. Henman,* 857 F.2d 1366, 1367 (9th Cir. 1988) (stating that a pending appeal does not affect a judgment's finality for preclusion purposes). This rule creates the potential for a collateral estoppel-based judgment based on a prior judgment that is subsequently vacated or reversed on appeal. *See* Wright & Miller, 18A Federal Practice & Procedure: Jurisdiction 2d. § 4433 (2002). Indeed, "in some cases, litigants and the courts have collaborated so ineptly that the second judgment has become conclusive even though it rested solely on a [prior] judgment that was later reversed." *Id.* (citing *Reed v. Allen,* 286 U.S. 191, 196-201 (1932)). In the context of district court litigation, this potential problem can be "avoided, whether by delaying further proceedings in the second action pending conclusion of the appeal in the first action, by a protective appeal in the second action that is held open pending determination of the appeal in the first action, or by a direct action to vacate the second judgment." *Collins,* 361 F. Supp. 2d at

1096 (citing Wright & Miller § 4433). Accordingly, we have held that the benefits of giving a judgment preclusive effect pending appeal outweigh any risks of a later reversal of that judgment. *See Tripati*, 857 F.2d at 367.

Here, the arbitrators were faced with a different, albeit similar, question. Specifically, they were faced with the question whether a judgment pending appeal should be given preclusive effect in an arbitration, a question that appears to be one of first impression in all jurisdictions.

The arbitrators recognized the district court's judgment as final,[9] but proceeded not to apply offensive non-mutual collateral estoppel because the FAA's narrow scope of review limits the ability of an arbitration defendant to overturn a collateral estoppel-based arbitration award in the event the judgment upon which it is based is vacated or reversed on appeal. *See Collins*, 361 F. Supp. 2d at 1089-90. Our case law supports the drawing of such a distinction:

> Indeed, there are fundamental differences between confirmed arbitration awards and judgments arising from a judicial proceeding. Absent an objection on one of the narrow grounds set forth in sections 10 or 11,[10] the [FAA] requires the court to enter judgment

---

[9]The arbitrators' concern that the Hickcox judgment was on appeal was not inconsistent with an understanding that the Hickcox judgment was final for collateral estoppel purposes. Indeed, the arbitrators would not have relied on the equities underlying the case to reach their decision had they simply denied Appellants' motion for summary judgment based on any one of the *Syverson* factors.

[10]"Sections 10 and 11 [of the FAA] permit a district court to vacate or modify an arbitration award under limited circumstances *unrelated to the merits*. For example, a court may vacate an award procured by corruption, fraud or undue means or rendered by a partial or corrupt arbitrator. *See* 9 U.S.C. § 10(a)(1), (2). Also, a court may modify an award to correct an obvious material miscalculation of figures or an imperfection in matter of form *not affecting the merits*. *See* 9 U.S.C. § 11(a), (c)." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1134 n.2 (9th Cir. 2000) (emphases added).

upon a confirmed arbitration award, without reviewing either the merits of the award or the legal basis upon which it was reached. A judgment upon a decision or order rendered by the court at the conclusion of a judicial proceeding, by contrast, confirms the merits of that decision. Along the same lines, a judgment under § 13 of the FAA is not subject to Federal Rules of Civil Procedure 59 or 60 whereas a judgment arising from a judicial proceeding is subject to reopening and challenge under those rules. And, unless the provisions of the parties' agreement provides to the contrary, there is no right under the FAA to appeal the merits of a confirmed arbitration award. In sum, a judgment upon a confirmed arbitration award is qualitatively different from a judgment in a court proceeding, even though the judgment is recognized under the FAA for enforcement purposes.

*Chiron Corp.*, 207 F.3d at 1133-34.

**[6]** We need not, however, resolve the question whether the arbitrators abused their discretion when they determined the qualitative difference between a district court judgment and an arbitration award rendered the application of offensive non-mutual collateral estoppel unfair. Rather, we resolve this case on the basis that "[t]he governing law alleged to have been ignored by the arbitrators [was not] *well defined, explicit, and clearly applicable*." *See Carter*, 374 F.3d at 838 (emphasis added). In short, the arbitrators could not manifestly disregard the law because no binding precedent existed as to whether (1) arbitrators are required to afford federal judgments preclusive effect, (2) arbitrators possess the same broad discretion as district courts in determining whether to apply offensive non-mutual collateral estoppel, and (3) the qualitative difference between a district court judgment and an arbitration award renders unfair the application of offen-

sive non-mutual collateral estoppel in arbitration on the basis of a prior judgment pending appeal.

**AFFIRMED.**