Filed 6/26/13  F.V. v. City of Anaheim CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| F.E.V., a Minor, etc., et al.,<br><br>    Plaintiffs and Appellants,<br><br>        v.<br><br>CITY OF ANAHEIM et al.,<br><br>    Defendants and Respondents. | G046937<br><br>(Super. Ct. No. 30-2011-00499175)<br><br>ORDER MODIFYING OPINION;<br>NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed herein on June 24, 2013, be modified as follows:

On page 10, the heading of part C, under section III, is deleted and replaced with the following:

### C.  Requirement One:  Identity of Issues

This modification does not effect a change in the judgment.

FYBEL, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


IKOLA, J.

Filed 6/24/13 (unmodified version)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| F.E.V., a Minor, etc., et al., | |
| Plaintiffs and Appellants, | G046937 |
| v. | (Super. Ct. No. 30-2011-00499175) |
| CITY OF ANAHEIM et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Gregory Munoz, Judge. Affirmed.

Law Offices of Dale K. Galipo, Dale K. Galipo and Melanie T. Partow for Plaintiffs and Appellants.

Cristina L. Talley, City Attorney, and Moses W. Johnson IV, Assistant City Attorney, for Defendants and Respondents.

\*      \*      \*

# I.

## INTRODUCTION

The dispositive issue in this case is whether, under principles of collateral estoppel, a judgment in a federal lawsuit on federal civil rights claims based on police conduct bars state law claims brought in state court based on the same conduct. We conclude collateral estoppel bars the state court lawsuit.

Adolf Anthony Sanchez Gonzalez (Decedent) was shot and killed in an incident with two Anaheim police officers. His mother and minor daughter (by and through her guardian ad litem, David Vazquez) filed a complaint in federal court (the Federal Complaint) against the City of Anaheim and the two officers. The Federal Complaint asserted civil rights claims under 42 United States Code section 1983 and five state law claims. The federal district court granted summary judgment in favor of the defendants on the civil rights claims and concluded the police officers did not use excessive force, act unreasonably, engage in conduct that shocked the conscience, or engage in conduct amounting to an independent violation of the Fourth Amendment to the United States Constitution. The federal court declined to exercise supplemental jurisdiction over the state law claims and dismissed them without prejudice.

Decedent's mother and minor daughter (by and through the same guardian ad litem) (collectively, Plaintiffs) then filed a complaint in superior court (the State Complaint) against the City of Anaheim and the two police officers (collectively, Defendants). The State Complaint reasserted the five state law claims dismissed without prejudice by the federal court. Defendants demurred to the State Complaint on the ground of collateral estoppel. The trial court sustained the demurrer without leave to amend and dismissed the State Complaint. Plaintiffs appeal.

We affirm. After we held oral argument in this matter, the Ninth Circuit Court of Appeals issued an opinion affirming the federal court judgment. (*Gonzalez v. City of Anaheim* (9th Cir., May 13, 2013, No. 11-56360) 2013 U.S.App. Lexis 9607.) On

2

our own motion, we take judicial notice of this opinion. (Evid. Code, §§ 452, subds. (c) & (d), 459, subd. (a).) In *Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 506 (*Hernandez*), the California Supreme Court held, under similar facts, that a federal court judgment adjudicating federal civil rights claims collaterally estopped the plaintiffs in that case from pursuing their state court wrongful death claim, including on the theory that the officers' conduct before the shooting was negligent. Likewise here, the federal court judgment collaterally estops Plaintiffs from pursuing their state law causes of action based on both the shooting and on theory the officers' conduct before the shooting was negligent.

## II.

### ALLEGATIONS, FACTS, AND PROCEDURAL HISTORY

### A. Allegations of the Federal Complaint

In the Federal Complaint, Plaintiffs asserted four claims for violation of civil rights pursuant to 42 United States Code section 1983 and state law claims for false arrest/false imprisonment, battery, negligence, and violation of the Bane Act. The four civil rights claims were (1) unreasonable search and seizure—detention and arrest; (2) unreasonable search and seizure and due process—excessive force and denial of medical care; (3) substantive due process; and (4) municipal liability for unconstitutional custom, practice, or policy.

The Federal Complaint's allegations were barebones: On September 25, 2009, Decedent was driving his car near the intersection of Santa Ana Street and Bond Street in the City of Anaheim. Decedent had not committed any crime, and Anaheim Police Officers Daron Wyatt and Matthew Ellis had neither reasonable suspicion to detain Decedent nor probable cause to arrest him. Officer Wyatt "discharged a firearm at the Decedent, striking him in the head, causing Decedent serious physical injury and

3

eventually killing him." (Some capitalization omitted.) Finally, the Federal Complaint alleged Decedent was unarmed and posed no imminent threat of death or serious physical injury to the officers.

## B. Summary Judgment in Federal Court

The United States District Court granted Defendants' motion for summary judgment of the federal civil rights claims. In an order entered July 11, 2011, the district court provided this factual background:

"On September 25, 2009, at approximately 2 a.m., Defendant Officers Ellis and Wyatt were en route to a service call regarding a sleeping transient. While the Defendant Officers were waiting at a red light to turn left, a Mazda MPV van stopped in the left turn lane next to them. When the signal turned green and the Defendant Officers were turning left, the Mazda veered into their lane, causing Officer Ellis to brake aggressively to avoid a collision. The Mazda then turned into a gas station at the corner. The Defendant Officers continued to their service call regarding the transient, but were unable to locate him.

"Subsequently, the Officers returned to the same intersection in an attempt to locate the Mazda, and found the van at the same gas station where it had stopped earlier. The Officers parked on the street so they could observe the Mazda. Officer Ellis saw a male enter the Mazda and drive away. The Officers then followed the Mazda to see if any law enforcement action would be necessary, and observed the van weaving within its own traffic lane.

"At 2:11 a.m., Officer Wyatt advised over the police radio that he and Officer Ellis intended to make a traffic stop, and activated the patrol unit's emergency lights. The Mazda then made a right turn onto another street, where it drove to the left of the center of the roadway, and eventually stopped at the curb. As the van was turning, Officer Wyatt saw the driver reaching down towards the right side of the driver's seat and leaning over with his right hand extended, as if he was picking something up. When

4

Officer Wyatt got out of the police vehicle and approached the Mazda van, the driver was still in the same position, but also looking over his left shoulder as if waiting for Officer Ellis to approach the vehicle. Officer Wyatt then drew his gun, pointed it at the driver, and said, 'if you reach down there again I'm gonna shoot you.' When Officer Ellis approached the driver's side of the vehicle, he saw that the driver's right hand was clenched into a fist and appeared to be holding something in a plastic bag. Officer Ellis told the driver to turn off the vehicle and show his hands. Both Defendant Officers could see the driver's hands in his lap area, but he still had not opened his right fist. Officer Wyatt then reached through the partially open window on the passenger side of the van and unlocked the passenger side door. He again told the driver to open his hand. When the driver still did not comply, Officer Wyatt reached inside the vehicle and struck the driver with his flashlight three times across the right elbow or tricep, using a backhand motion. The driver then raised his right fist toward his mouth and moved his left hand in the area between the door and the seat.

"Officer Ellis tried to open the driver's door, but it was locked, so he reached through the window on the driver's side to unlock the door. Officer Ellis asserts that he then reached through the window and inside the vehicle, reaching around the back of the driver's head with his right arm, while attempting to control the driver's right hand. Officer Wyatt testified in his deposition that he believed Officer Ellis was applying a carotid restraint on the driver. Officer Wyatt then backed out of the vehicle and requested assistance over the police radio. Officer Ellis told the driver to turn off the engine and give him his hand. The driver did not respond to either of the Officers' commands and tried to push the Officers away. Officer Wyatt did not see the driver's hands make contact with Officer Ellis while he was being held in a head restraint. However, Officer Wyatt believed the driver was trying to strike Officer Ellis. Officer Wyatt then entered the van, putting both knees on the passenger seat, and punched the driver five to six times on his head and face.

5

"While Officer Ellis was restraining the driver, the driver reached toward the van's steering column gear shift. Officer Ellis believed the driver was attempting to shift the van into a driving gear, so he struck the driver on the back of the head with his flashlight. Nevertheless, the driver managed to reach forward toward the gear shift, 'slap' it into a driving gear, and step on the gas pedal. Because Officer Ellis feared that he would be pulled forward with the van, he pulled himself out of the driver's side window and struck the driver as he was withdrawing from the vehicle.

"Officer Wyatt, who was still in the van with the driver, yelled at the driver to stop. The driver did not comply. Officer Wyatt then tried to knock the gear shift into neutral or park two to three times, but the driver batted his hand away each time. The driver drove while alternating his hands between the steering wheel and the areas on the side of his seat; he did not have both hands on the steering wheel at the same time. Officer Wyatt yelled at the driver to stop, but the driver did not comply. Officer Wyatt then drew his gun and fatally shot the driver in the head. The van had traveled approximately 50 feet in the span of 10 seconds, which is equivalent to less than 5 miles per hour."

In granting summary judgment on the civil rights claim based on excessive force, the district court stated: "Officer Wyatt did not use excessive force when he struck the decedent's arm with a flashlight in an attempt to get the decedent to open his right hand. Both Officers Ellis and Wyatt tried multiple times to gain the decedent's compliance without the use of force. They ordered the decedent several times to open his hand, but each time, the decedent refused to comply with their orders, keeping his fist clenched. Given the decedent's consistent failure to comply with the Officers' orders, Officer Wyatt had legitimate concerns that the decedent might have either a weapon or contraband in his fist. As such, it was reasonable for him to use some level of force to gain compliance from the decedent." The district court concluded that "even assuming that Officer Ellis used a carotid restraint on the decedent, such use of force was

6

reasonable under the circumstances." In addition, the district court concluded, "even considering the facts in the light most favorable to Plaintiffs, the Court finds that Officer Wyatt acted reasonably under the circumstances when he shot the decedent in the head after ordering the decedent to stop the car and trying to stop the car himself several times."

The district court also stated: "Plaintiffs argue that because the Officers acted recklessly and negligently before the shooting, a reasonable fact finder could conclude that they provoked the deadly force situation and should therefore be liable. However, the Ninth Circuit has held that 'the fact that an officer negligently gets himself into a dangerous situation will not make it unreasonable for him to use force to defend himself.' [Citation.] 'Thus, even if an officer negligently provokes a violent response, that negligent act will not transform an otherwise reasonable subsequent use of force into a Fourth Amendment violation.' [Citation.] As discussed above, none of the Officers' actions prior to the shooting constituted an independent Fourth Amendment violation. As such, Plaintiffs' argument is not persuasive."

On the substantive due process claim, the district court found that Officers Wyatt and Ellis were forced to make "split-second decisions" in an "emergency situation" requiring "immediate reaction." Although Decedent was unarmed, the officers' conduct did not "shock the conscience," the standard for a substantive due process claim, because the officers reasonably reacted to a perceived or an imminent threat to their safety.

Defendants also moved for summary judgment of the state law claims. The district court declined to exercise supplemental jurisdiction over the state law claims and dismissed them without prejudice.

On May 13, 2013, the Ninth Circuit Court of Appeals issued its unpublished opinion affirming the federal court judgment. (*Gonzalez v. City of Anaheim*, *supra*, 2013 U.S.App. Lexis 9607.)

7

## C. Allegations of the State Complaint

Following the district court's dismissal of the state law claims, Plaintiffs filed the State Complaint, which asserted causes of action for (1) false arrest/false imprisonment, (2) battery, (3) negligence, (4) wrongful death, and (5) violation of the Bane Act.

The State Complaint overlaps the Federal Complaint but provides more detail. The State Complaint alleged the following:

On September 25, 2009, Decedent was driving his car near the intersection of Santa Ana Street and Bond Street in the City of Anaheim. Anaheim Police Officers Daron Wyatt and Matthew Ellis ordered Decedent to stop. Decedent had committed no crime and the officers did not have cause to stop Decedent. Both officers approached Decedent's car. Officer Ellis placed Decedent in a carotid restraint, and Officer Wyatt struck him in the arms and head with a flashlight and punched him in the face. Decedent never hit, punched, kicked, or threatened either police officer. Officer Wyatt then got into Decedent's car and fired a gun at Decedent's head from six inches away. Decedent suffered serious physical injuries and later died. Decedent was unarmed.

## D. Demurrer

Defendants demurred to the State Complaint on the ground the federal court judgment collaterally estopped Plaintiffs from pursuing their state law causes of action. The trial court granted Defendants' unopposed request for judicial notice of the Federal Complaint, the district court's order granting summary judgment, and the judgment on the Federal Complaint.

The trial court sustained Defendants' demurrer without leave to amend, on the following ground: "All five causes of action asserted in this action require a determination as to whether Officers Wyatt and Ellis acted reasonably under the circumstances. This issue has already been litigated and decided in [the federal court action]."

8

# III.

## THE REQUIREMENTS OF COLLATERAL ESTOPPEL ARE SATISFIED.

### A. Threshold Requirements

"'Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings. [Citation.] Traditionally, we have applied the doctrine only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. [Citations.]' [Citation.]" (*Hernandez*, *supra*, 46 Cal.4th at p. 511.)

### B. Requirements Two Through Five

We start by addressing requirements two through five, and address the first requirement (identity of issues) at length below in part C. Requirement two (actually litigated) and requirement three (necessarily decided) are satisfied. In granting summary judgment on Plaintiffs' civil rights claims, the district court decided adversely to Plaintiffs the issues whether Officers Wyatt and Ellis used excessive force against Decedent, whether the officers acted reasonably under the circumstances, and whether the officers' conduct shocked the conscience under substantive due process standards. Those issues were fully litigated in the district court. (See *Hernandez*, *supra*, 46 Cal.4th at p. 511 ["For purposes of collateral estoppel, an issue was actually litigated in a prior proceeding if it was properly raised, submitted for determination, and determined in that proceeding"].) Litigation of those issues was necessary to a ruling on Defendants' motion for summary judgment and resolving Plaintiffs' federal civil rights claims.

9

The fourth requirement (finality) is satisfied. The judgment on the Federal Complaint has been affirmed by the Ninth Circuit Court of Appeals and is final notwithstanding the possibility of further proceedings before the Ninth Circuit or review in the United States Supreme Court. (*Collins v. D.R. Horton, Inc.* (9th Cir. 2007) 505 F.3d 874, 882 ["a final judgment retains its collateral estoppel effect, if any, while pending appeal"]; *Tripati v. Henman* (9th Cir. 1988) 857 F.2d 1366, 1367 [a pending appeal does not affect a judgment's finality for preclusion purposes].) "A federal judgment 'has the same effect in the courts of this state as it would have in a federal court.'" (*Younger v. Jensen* (1980) 26 Cal.3d 397, 411; see also *Calhoun v. Franchise Tax Bd.* (1978) 20 Cal.3d 881, 887 ["A federal judgment is as final in California courts as it would be in federal courts"]; *Martin v. Martin* (1970) 2 Cal.3d 752, 761 ["A federal court judgment has the same effect in the courts of this state as it would in a federal court"].)

The final requirement (privity of parties) is satisfied because the parties against whom preclusion is sought—Plaintiffs—were also the plaintiffs in the federal court action.

### C. Requirement Two: Identity of Issues

1. *The* Hernandez *Opinion*

The """identical issue" requirement addresses whether "identical factual allegations" are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same. [Citation.]' [Citation.]" (*Hernandez*, *supra*, 46 Cal.4th at pp. 511-512.) In this case, the factual allegations resolved in federal court are identical to those raised in the State Complaint and were necessary for Plaintiffs to recover under the state law causes of action.

*Hernandez*, *supra*, 46 Cal.4th 501, is on point. In *Hernandez*, the decedent led City of Pomona police officers on a high-speed car chase until the decedent's car crashed. (*Id.* at p. 506.) The decedent got out of his car and ran away, with the police on

10

foot in close pursuit.  (*Id.* at p. 507.)  According to one witness, the decedent lifted his shirt to expose his waistline and yelled that he did not have a gun.  (*Ibid.*)  According to one police officer, the decedent at one point reached toward his front pocket and yelled that he had a gun.  (*Ibid.*)  One police officer broadcast over his radio that the decedent had a gun.  (*Ibid.*)  A police dog was released and joined the pursuit.  (*Ibid.*)

The police dog caught up with the decedent, struck him in the shoulder, and spun him around.  (*Hernandez*, *supra*, 46 Cal.4th at p. 507.)  According to one police officer, as the dog struck the decedent, he reached toward his waistband and yelled, "'I got a gun'" or "'Gun.'"  (*Ibid.*)  In response, the officer fired his gun at the decedent.  (*Ibid.*)  The other police officers, hearing gunshots, assumed the officer was in a gun battle with the decedent.  (*Ibid.*)  The officers fired a total of 37 shots, hitting the decedent 22 times and killing him.  (*Ibid.*)  The decedent was unarmed.  (*Ibid.*)

The decedent's parents and minor children, the plaintiffs, filed a complaint in federal court against the City of Pomona and the police officers, seeking damages in connection with the decedent's death.  (*Hernandez*, *supra*, 46 Cal.4th at pp. 507-508.)  The plaintiffs asserted federal civil rights claims under 42 United States Code section 1983 and state law claims.  (*Hernandez*, *supra*, p. 508.)  The federal court bifurcated the federal and state law claims, and the federal claims went to trial before a jury, which rendered a verdict in favor of all but one of the police officers.  (*Ibid.*)  The jury could not reach a verdict as to the remaining police officer, and the federal court granted his motion for judgment as a matter of law, based on qualified immunity.  (*Ibid.*)  The federal court declined to exercise supplemental jurisdiction and dismissed without prejudice the plaintiffs' state law claims.  (*Id.* at p. 509.)

The plaintiffs filed an action against the same defendants in superior court.  (*Hernandez*, *supra*, 46 Cal.4th at p. 509.)  The complaint included a wrongful death claim based on the same allegations the plaintiffs had set forth in the wrongful death claim of their federal lawsuit.  (*Ibid.*)  The defendants demurred to the complaint on the ground

11

that in the federal action, the issue of excessive and unreasonable force had been decided in their favor and that decision barred the plaintiffs' state law wrongful death cause of action under collateral estoppel principles. (*Ibid.*) The trial court agreed with the defendants on the issue of excessive force, but overruled the demurrer because, the court concluded, the federal court judgment did not bar the plaintiffs from recovering under a theory that the defendants failed to summon medical aid and prevented aid from being rendered once it was available. (*Id.* at p. 510.) To expedite an appeal, the plaintiffs dismissed with prejudice their wrongful death claim to the extent it was based on allegations regarding medical aid. (*Ibid.*) The plaintiffs then appealed from the judgment in the defendants' favor. (*Ibid.*)

The Court of Appeal reversed the judgment. (*Hernandez*, *supra*, 46 Cal.4th at p. 510.) The Court of Appeal held the federal court judgment did preclude the plaintiffs from recovering on the theory that the police officers failed to exercise reasonable care in using deadly force. (*Ibid.*) The Court of Appeal then held, however, the plaintiffs could proceed on the theory the officers failed to use reasonable care in creating, through their preshooting conduct, a situation in which it was reasonable for them to use deadly force. (*Ibid.*)

The Supreme Court reversed the Court of Appeal. The Supreme Court held that, "on the record and conceded facts here, the federal judgment collaterally estops plaintiffs from pursuing their wrongful death claim, even on the theory that the officers' preshooting conduct was negligent." (*Hernandez*, *supra*, 46 Cal.4th at p. 506.) The court explained that the issue whether the officers exercised reasonable care in the use of deadly force was raised, submitted for decision, and actually decided against the plaintiffs in the federal action in resolving their claims under 42 United States Code section 1983. (*Hernandez*, *supra*, at p. 512.) The court rejected the plaintiffs' argument that the standard of reasonableness in a section 1983 action based on excessive force is not the

12

same as the standard of reasonableness applicable in a negligence action under California law. (*Id.* at p. 513.)

Although the federal jury did not make a finding on the officers' conduct before the shooting, the Supreme Court concluded that, in light of the finding by the federal jury that the shooting was reasonable, "liability in this case may not be based on the officers' alleged preshooting negligence." (*Hernandez*, *supra*, 46 Cal.4th at pp. 517-518.) The officers had probable cause to arrest the decedent and therefore did not act unreasonably by making the decision to pursue him. (*Id.* at pp. 518-519.) Various California statutes protected the officers from civil liability based on the manner in which they carried out the pursuit. (*Ibid.*)

2. *Plaintiffs' State Law Causes of Action*

The federal court judgment collaterally estops Plaintiffs from pursuing their wrongful death and negligence causes of action. Here, as in *Hernandez*, the issue whether Officers Wyatt and Ellis exercised reasonable care in the use of deadly force was raised, submitted for decision, and actually decided against Plaintiffs in the federal action in resolving their claims under 42 United States Code section 1983. The district court, in granting summary judgment, adjudicated the issues whether Officers Wyatt and Ellis used excessive force, acted reasonably under the circumstances, and engaged in conduct that shocked the conscience under substantive due process standards. In affirming the federal court judgment, the Ninth Circuit concluded the officers did not use deadly force and had probable cause to believe Decedent posed a significant threat of causing death or serious injury to them or to others. (*Gonzalez v. City of Anaheim*, *supra*, 2013 U.S.App. Lexis 9607 at pp. *12, *16.)

Plaintiffs argue the district court's conclusion the officers acted reasonably under the circumstances did not extend to their conduct before shooting Decedent. To the contrary, the district court rejected Plaintiffs' argument the officers acted recklessly and negligently before the shooting, and found that "none of the Officers' actions prior to

13

the shooting constituted an independent Fourth Amendment violation." On the issue of the officers' prior conduct, the Ninth Circuit concluded: "[Decedent]'s representatives argue that the shooting was provoked by the officers' prior conduct. As a result, they claim we should hold the shooting unreasonable. However, we have held that in order for an officer's conduct to render an otherwise reasonable response unreasonable, the prior conduct must itself be an independent constitutional violation. [Citation.] Because the officers' prior conduct never amounted to a constitutional violation, the shooting was not unreasonable as a result." (*Gonzalez v. City of Anaheim*, *supra*, 2013 U.S.App. Lexis 9607 at pp. *16-*17.) Thus, "in light of the finding [by the federal court] that the shooting was reasonable, liability in this case may not be based on the officers' alleged preshooting negligence." (*Hernandez*, *supra*, 46 Cal.4th at p. 518.)

The federal court judgment also collaterally estops Plaintiffs from pursuing their battery and false arrest/false imprisonment causes of action. A title 42 United States Code section 1983 claim has been described as the federal counterpart of a state law cause of action for battery or wrongful death. (*Yount v. City of Sacramento* (2008) 43 Cal.4th 885, 902.) A common law battery cause of action against a police officer making an arrest or detention requires proof the officer used unreasonable force. (*Ibid.*, citing *Edson v. City of Anaheim* (1998) 63 Cal.App.4th 1269, 1273-1274.) In the false arrest/false imprisonment cause of action, Plaintiffs alleged Officers Wyatt and Ellis deprived Decedent of his freedom of movement "by use of force, threats of force, menace, fraud, deceit, and unreasonable duress," and detained Decedent without probable cause.

The Federal Complaint alleged a claim for civil rights violation based on "unreasonable search and seizure—detention and arrest" (capitalization omitted), the district court adjudicated the issue whether Officers Wyatt and Ellis used excessive or unreasonable force in placing Decedent in a carotid restraint and striking him, and the Ninth Circuit affirmed. The officers had probable cause to make a traffic stop, and, as

14

the district court concluded, the officers' actions before the shooting did not constitute an independent Fourth Amendment violation. When the officers approached Decedent, he refused to comply with their orders to unclench his fists and demonstrate he was unarmed. Thus, under principles of collateral estoppel, the federal court judgment bars Plaintiffs from recovering for false arrest/false imprisonment.

Plaintiffs' fifth cause of action asserted a violation of the Bane Act, which is cited in the State Complaint as Civil Code section 51.7. The "'Tom Bane Civil Rights Act,'" or the "'Bane Act,'" is codified at Civil Code section 52.1, while section 51.7 is commonly known as the "'Ralph Act'" or the "'Ralph Civil Rights Act.'" (*Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820, 845 (conc. opn. of Baxter, J.).) The fifth cause of action alleged that Officers Wyatt and Ellis "interfered with or attempted to interfere with the rights of DECEDENT to be free from unreasonable searches and seizures, and to be free from state actions that shock the conscience, by threatening or committing acts involving violence, threats, coercion, or intimidation." These allegations track section 52.1, subdivision (a).[1]

"Civil Code section 52.1 authorizes an action at law, a suit in equity, or both, against anyone who interferes, or tries to do so, by threats, intimidation, or coercion, with an individual's exercise or enjoyment of rights secured by federal or state law." (*Jones v. Kmart Corp.* (1998) 17 Cal.4th 329, 331.) "A defendant is liable if he or she interfered with or attempted to interfere with the plaintiff's constitutional rights by

---

[1] Civil Code section 52.1, subdivision (a) provides, in relevant part: "If a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney may bring a civil action for injunctive and other appropriate equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights secured."

15

the requisite threats, intimidation, or coercion." (*Shoyoye v. County of Los Angeles* (2012) 203 Cal.App.4th 947, 956.)

In the fifth cause of action, Plaintiffs alleged that Officers Wyatt and Ellis interfered with Decedent's Fourth Amendment right to be free from unreasonable searches and seizures, and substantive due process rights to be free from state actions that shock the conscience. The district court found against Plaintiffs on their civil rights claims, which included claims of unreasonable search and seizure, excessive force, and violation of substantive due process. As a consequence, Plaintiffs are collaterally estopped from pursuing their cause of action under Civil Code section 52.1.

## IV.

### DISPOSITION

The judgment is affirmed. Respondents shall recover costs incurred on appeal.

FYBEL, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

IKOLA, J.

16